**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-40512

JOSEPH STANLEY FAULDER

Petitioner-Appellant

VERSUS

WAYNE SCOTT, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION

Respondent-Appellee

Appeal from the United States District Court
For the Eastern District of Texas
(                    )

Before JONES, DUHÉ and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

Petitioner appeals from denial of his petition for writ of habeas corpus seeking relief from his death sentence. We affirm.

Petitioner, Joseph Stanley Faulder, is a Canadian citizen who was twice convicted and sentenced to death for the murder of Inez Phillips, an elderly widow, during the armed robbery of her home. The first conviction was reversed by the Texas Court of Criminal Appeals because Faulder's confession, which was admitted into

evidence, was obtained in violation of the Fifth Amendment. Faulder v. State, 611 S.W.2d 630 (Tex. Crim. App. 1979) *cert. denied* 449 U.S. 874 (1980). The second conviction was obtained with testimony from Faulder's accomplice, Lynda McCann, who did not testify at the first trial. Because no physical evidence connects Faulder to the murder, McCann's testimony was critical.

After unsuccessful direct appeals, Faulder filed a petition for habeas corpus and a motion for stay of execution in state court. The court held an evidentiary hearing on Faulder's ineffective assistance of counsel claim and recommended that relief be denied. The Court of Criminal Appeals denied Faulder's petition.

Faulder now seeks relief from the federal courts. He filed a petition for writ of habeas corpus and motion for stay of execution. The district court granted the stay of execution and held an evidentiary hearing on the use of special prosecutors and whether the prosecution allowed McCann to testify falsely. After the hearing, the court denied Faulder's petition but granted a certificate of probable cause to appeal. Faulder claims he is entitled to relief because: (1) the use of special prosecutors violated the Eighth and Fourteenth Amendments, (2) the prosecution allowed its chief witness, Lynda McCann, to testify falsely in violation of Faulder's Fifth, Sixth and Fourteenth Amendment rights, (3) Faulder received ineffective assistance of counsel, and (4) Faulder's right to compulsory and due process was violated when

2

law enforcement officials violated the Vienna Convention on Consular Relations.

We review the district court's findings of fact for clear error, but review issues of law *de novo*. <u>Williams v. Collins</u>, 16 F.3d 626 (5th Cir. 1994). A finding of fact is clearly erroneous only when the reviewing court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. <u>Id.</u>

I. THE USE OF SPECIAL PROSECUTORS

There is no *per se* constitutional prohibition against the use of special prosecutors. <u>Powers v. Hauck</u>, 399 F.2d 322 (5th Cir. 1968). However, the use of special prosecutors raises concerns that the prosecutor's loyalty to the person who pays the special prosecutor may override the interests of society in justice and a fair trial for the accused. We require, therefore, that the district attorney retain control of the prosecution, the special prosecutor not be guilty of conduct prejudicial to the defendant, and the rights of the defendant be duly observed. <u>Id.</u> at 325.

Faulder argues that the special prosecutors controlled his prosecution. Control of the prosecution means control of crucial prosecutorial decisions, such as whether to prosecute, what targets of prosecution to select, what investigative powers to utilize, what sanctions to seek, plea bargains to strike or immunities to grant. <u>East v. Scott</u>, 55 F.3d 996 (5th Cir. 1995). Control is not

determined according to a quantitative analysis or a determination of who was lead counsel at trial.  Person v. Miller, 854 F.2d 656 (4th Cir. 1988)(cited with approval in East, 55 F.3d at 1001).  In fact, "[w]e can conceive of situations in which without ever relinquishing effective control of the prosecution government counsel might for tactical reasons give over even more substantial portions of the actual conduct of trial to particularly skilled or knowledgeable private counsel."  Person, 854 F.2d at 663.

The special prosecutors in the second trial were Odis Hill, the former district attorney who prosecuted Faulder at his first trial and Phil Burleson, a former prosecutor and well known criminal defense attorney.  Mr. Hill resigned from his position as district attorney between Faulder's first and second trial.  After the new district attorney, Robert Foster, was appointed, Hill offered to assist in retrying Faulder.  Within thirty days of taking office, Foster faced two other demanding trials and the death of his mother.  Considering his professional and personal demands and the relative inexperience of his remaining staff, Foster accepted Hill's offer.  Five months later, the victim's son agreed to pay fees to Hill's law firm.[1]

After the first conviction was overturned, Burleson was hired by the victim's son to determine whether a second prosecution was possible without the use of Faulder's confession.  Burleson

---

[1]  Hill was also a special prosecutor in Lynda McCann's case but was paid by the County.

retained investigators and a Canadian law firm to aid in rendering his opinion that a second prosecution could proceed provided McCann would testify. All of Burleson's fees and expenses were paid by the victim's son.

Foster assigned Jim McCoy, an assistant district attorney with two years experience, to be his representative. McCoy kept a low public profile both before and at trial and allowed Hill and Burleson to take the lead in the proceedings. At the district court evidentiary hearing, however, Hill testified that he always understood that the district attorney had the final word and would maintain control and management of the case. Hill maintained contact with Foster and he and Foster were in agreement on decisions made throughout the case. Burleson worked with Hill and Hill in turn made the necessary contacts with Foster. Further, Hill, Burleson and McCoy testified that they made decisions together, prepared witnesses together, were in agreement on most issues and worked out the differences on all others.

In light of Hill's prior relationship with the district attorney's office, the frequent communication between counsel and clear understanding of the district attorney's final decision-making authority, we agree with the district court's conclusion that the district attorney controlled Faulder's prosecution.

Faulder claims that Burleson's investigative activities were conducted without the involvement or knowledge of the district attorney's office and therefore, he is entitled to relief. This

argument does not merit reversal. First, use of investigative resources is only one of several prosecutorial decisions which we must consider in determining control. Second, even if Burleson's actions were violative of our standard, the violations were corrected once Hill began to assist in the prosecution and McCoy was assigned by Foster.[2] From at least that point on, the district attorney was in control of the prosecution. *See* <u>Woods v. Linahan</u>, 648 F.2d 973 (5th Cir. Unit B June 1981).

Faulder also contends that the use of special prosecutors violates the Eighth Amendment and causes arbitrary and capricious imposition of the death penalty. He reasons that defendants who kill wealthy victims are more likely to receive the death penalty because their cases are more vigorously prosecuted by special prosecutors hired by family and friends of the victim. We find no merit in Faulder's argument. To accept this argument would mean that prosecutions involving special prosecutors would be *per se* unconstitutional in direct opposition to the rule of <u>Powers</u>.

II. Failure to correct false testimony.

Faulder argues that he was denied due process when the prosecution did not correct McCann's false testimony. At trial, defense counsel asked whether McCann was promised $10,000 to

---

[2] The exact point at which Burleson's role changed from advisor to the victim's son to special prosecutor is unclear. His investigation, therefore, may not have been part of his prosecutorial activities.

6

$15,000 in return for her testimony. McCann stated, under vigorous cross examination, that she had not been promised money in return for her testimony. She said she expected relocation expenses although not in the form of cash payment. The government's witnesses corroborate McCann's testimony that McCann would be provided relocation expenses by the victim's son to protect McCann from Faulder should he be acquitted.

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959); Cordova v. Collins, 953 F.2d 167 (5th Cir. 1992). To obtain relief, the defendant must show that (1) the testimony was actually false, (2) the state knew it was false and (3) the testimony was material. Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993). Faulder has not shown that McCann's testimony was actually false.

III. Ineffective assistance of counsel

Faulder maintains that he received ineffective assistance of counsel because his attorney presented no mitigating evidence during the sentencing phase of the trial. Defense counsel testified that he did not know that presentation of evidence at sentencing was allowed under Texas procedure even though he was board certified in criminal law and was a state criminal district attorney for approximately four years.

To prevail on an ineffective assistance of counsel claim, a

7

defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668 (1984). The district court agreed that counsel's performance was deficient[3] but that the performance did not prejudice the defense. To show prejudice, the defendant must show that it is reasonably likely that the jury would have reached a different decision absent counsel's unprofessional errors. Strickland, 466 U.S. at 696.

Faulder argues that the following evidence could have been introduced and would have caused the jury to deliver a sentence other than death:

    (1)   Defendant sustained brain damage near his fourth birthday when his head was split open on both sides after falling out of a moving car.

    (2)   Expert testimony that Defendant suffered from organic brain disorder which impaired his judgment and impulse control and disqualifies a diagnosis of sociopathy and that Defendant suffered from depression and alcoholism.

    (3)   Prison records from both Canada and the United States which show that Defendant was a peaceable prisoner.

    (4)   Testimony from family and friends that the Defendant was a loyal friend, a trusted employee, the father of two girls and had once saved the life of an accident victim when he drove the woman to the hospital in a blizzard.

This evidence, however, is double edged. Despite Faulder's

---

[3] *Compare* Williams v. Collins, 16 F.3d 626 (5th Cir. 1994)(failure to offer mitigating evidence at sentencing phase not deficient if a result of a strategic choice).

8

head injury, he did not exhibit confusion, uncertainty or mental impairment during the murder. Faulder abandoned his children and their mother when he left Canada. Faulder had no contact with his family for the twenty years prior to trial and at trial, he instructed his lawyer not to contact his family.[4] The evidence also indicates that Faulder is intelligent and came from a loving, supportive family which would make him less sympathetic. And, the Canadian prison records contain information that despite his mental abilities, he was unable to keep his behavior under control. Testimony available from Texas authorities would have indicated that he had a bad reputation.

We are not persuaded that had all this evidence been introduced, a different sentence is a reasonably likely result.

IV. Vienna Convention

The Vienna Convention on Consular Relations requires an arresting government to notify a foreign national who has been arrested, imprisoned or taken into custody or detention of his right to contact his consul. Vienna Convention on Consular Relations, April 24, 1963, TIAS 6820, 21 U.S.T. 77. Canadian regulations require the Canadian consul to obtain case-related information if requested by the arrestee to the extent that it cannot otherwise be obtained by the arrestee. Manual of Consular

---

[4] Defense counsel asked Faulder to have his family attend trial to humanize him before the jury. Faulder argues that had he known they could testify, he would have changed his mind about not contacting the family.

Instructions of the Department of Foreign Affairs and International Trade of Canada, Volume 11, Chapter 2, Annex D.

Texas admits that the Vienna Convention was violated. After investigating the allegations, William Zapalac, Assistant Attorney General of Texas, could find no evidence that Faulder had been advised of his rights under the Convention. However, the district court correctly concluded that Faulder or Faulder's attorney had access to all of the information that could have been obtained by the Canadian government. While we in no way approve of Texas' failure to contact the Canadian authorities, the evidence that would have been obtained by the Canadian authorities is merely the same as or cumulative of evidence defense counsel had or could have obtained. *See* United States v. Valenzuela-Bernal, 458 U.S. 858 (1982). The violation, therefore, does not merit reversal.

Judgment of the district court AFFIRMED, stay of execution VACATED.