**UNITED STATES of America,**
**Plaintiff,**

v.

**Juan CHAPARRO–ALCANTARA,**
**and Jaime Romero–Bautista,**
**Defendants.**

**No. 98–30070.**

United States District Court,
C.D. Illinois,
Springfield Division.

March 5, 1999.

---

Esteban F. Sanchez, Office of the U.S. Attorney, Springfield, IL, for plaintiff.

David B. Mote, Chaparro–Alcantara, Springfield, IL, Eric Schwing, Romero–Bautista, Springfield, IL, for defendant.

## *OPINION*

SCOTT, District Judge.

This cause is before the Court on Defendants' Joint Motion to Suppress Statements.

### I.  Background

Juan Chaparro–Alcantara and Jaime Romero–Bautista are Mexican citizens who have been granted lawful permanent resident status in the United States. They have been indicted for transporting illegal aliens on October 21, 1998, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

Law enforcement agents arrested Chaparro–Alcantara and Romero–Bautista on October 21, 1998, in South Jacksonville, Illinois, after discovering that the Defendants were driving a van filled with 13 Mexican nationals that were illegally in the United States. After their arrest, Chaparro–Alcantara and Romero–Bautista were transported to the Springfield, Illinois office of the United States Immigration and Naturalization Service ("I.N.S."). In Springfield, I.N.S. Agent Tom Merchant advised each Defendant in Spanish, his native language, of his *Miranda* rights. However, neither Agent Merchant nor the I.N.S. notified the Defendants of their right to contact Mexican consular officials during their detention. Subsequently, the Defendants made some inculpatory statements which they now seek to suppress.

Chaparro–Alcantara and Romero–Bautista argue that the Court should suppress

their statements because the Government failed to notify them of their right to speak with the Mexican Consulate, a right that is provided under Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, Art. 36, 21 U.S.T. 77 ("Vienna Convention"). Relevant text of Article 36 is as follows:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

(a) consular officers shall be free to communicate with the nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. *The said authorities shall inform the person concerned without delay of his right under this subparagraph;*

(c) consular officials shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation.

Vienna Convention, Art. 36, 21 U.S.T. at 100–101. (emphasis added).

The Government makes two arguments in opposition to the suppression motion: first, Chaparro–Alcantara and Romero–Bautista lack "standing" to seek redress

from a violation of the Vienna Convention because the Article does not create private enforceable rights. Second, even if they did have standing, Chaparro–Alcantara and Romero–Bautista failed to show prejudice from the I.N.S.'s failure to advise them of their treaty rights.

For the reasons stated *infra,* the Court denies the Defendants' motion to suppress.

## II. Analysis

### A. Standing Issue

■ The parties dispute whether Article 36 of the Vienna Convention creates a private right that is enforceable through the exclusionary rule. The Government argues that the Vienna Convention only creates rights enforceable by the "State," and hence, Chaparro–Alcantara and Romero–Bautista lack standing. *See e.g., Edye v. Robertson,* 112 U.S. 580, 598, 5 S.Ct. 247, 28 L.Ed. 798 (1884); *Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). However, it acknowledges that a private action can arise under a treaty when the treaty expressly or by implication provides for a private right of action. *See Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 442, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989); *Columbia Marine Services, Inc. v. Reffet Ltd.,* 861 F.2d 18, 21 (2d Cir.1988).[1] Thus, the issue becomes whether the Vienna Convention explicitly or implicitly created private enforceable rights. Unfortunately, the Seventh Circuit has not addressed this issue, and the issue remains very "murky." *See United States v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1095 (S.D.Cal.1998).

To support its position that Article 36 does not create private enforceable rights, the Government cites to the preamble to the Vienna Convention. The preamble states that the "purpose of the [consular] privileges and immunities is not to benefit individuals but to ensure the efficient per-

---

1. The parties do not dispute that the Vienna Convention is a "self-executing" document— the treaty has the force of law without enabling legislation. *See Breard v. Pruett,* 134

F.3d 615, 621 (4th Cir.1998) (Butzner, J. concurring) (citing *Faulder v. Johnson,* 81 F.3d 515, 520 (5th Cir.1996)).

formance of functions by consular posts on behalf of their respective states." 21 U.S.T. at 79. However, the Court notes that the actual text of Article 36, which is more persuasive as to the parties' intent, suggests that persons have individual notification "rights" under the sub-paragraph. Moreover, many courts, including the United States Supreme Court, and at least one commentator, have suggested that an individual does have a "right" under the treaty that grants the party "standing" to seek redress. *E.g., Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (per curiam) (stating that the Convention "arguably confers on an individual the right to consular assistance following arrest"); *Villafuerte v. Stewart*, 142 F.3d 1124 (9th Cir.1998) (entertaining a claim of a violation of the Convention without discussing the standing issue); *Faulder v. Johnson*, 81 F.3d 515, 520 (5th Cir. 1996) (same); *United States v. Salas*, No. 98–4374, 1998 WL 911731, at * 3 (4th Cir. Dec. 31, 1998) (same); *Breard v. Netherland*, 949 F.Supp. 1255, 1263 (E.D.Va.1996) (same), *aff'd*, 134 F.3d 615 (4th Cir.1998); *Esparza–Ponce*, 7 F.Supp.2d at 1096 (same); *Mami v. Van Zandt*, No. 89–CIV–0554 (TPG), 1989 WL 52308, at *1 (S.D.N.Y. May 9, 1989) (same); *see also* Mark J. Kadish, *Article 36 of the Vienna Convention on Consular Relations: Search for the Right to Consul*, 18 MICH.J. INT'L L. 565, 589–603 (1997) (arguing that the Convention confers enforceable individual rights); *But see Republic of Paraguay v. Allen*, 949 F.Supp. 1269, 1274 (E.D.Va.1996) (suggesting that the Convention does not confer private enforceable rights), *aff'd*, 134 F.3d 622 (4th Cir.1998). In light of the language in Article 36 and the above cited authority, the Court finds that Chaparro–Alcantara and Romero–Bautista have an individual right to consular notification under Article 36 which in turn grants them standing to object to a violation of that provision.

In this case, it is undisputed that the I.N.S. violated the Vienna Convention by failing to advise Chaparro–Alcantara and Romero–Bautista of their right to speak with the Mexican consul. Thus, the issues become whether the exclusionary rule is a remedy that is available to redress a violation of Article 36, and whether Chaparro–Alcantara and Romero–Bautista met the evidentiary threshold to invoke the exclusionary rule.

**B. Appropriate Remedy for an Article 36 Violation**

■ It is well established that the exclusionary rule is applied generally to deter the police from violating a person's *constitutional* rights. *See, e.g., Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[the exclusionary rule's] purpose is to deter—to compel respect for constitutional guaranty in the only effectively available way—by removing the incentive to disregard it"); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In addition, unless a statute expressly provides otherwise, the exclusionary rule is generally not available as a remedy for a violation of the statute. Thus, in order for Chaparro–Alcantara and Romero–Bautista to invoke the exclusionary rule in this case, the Vienna Convention must explicitly provide for that remedy, or the violation of the treaty must rise to a level of a constitutional violation.

■ It is clear that Article 36 does not create a "fundamental" right, such as the Sixth Amendment right to counsel, or the Fifth Amendment right against self-incrimination which originates from concepts of due process. *See Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir.1993) ("[a]lthough compliance with our treaty obligations clearly is required, we decline to equate such a provision with fundamental rights ..."); *Esparza–Ponce*, 7 F.Supp.2d at 1097 (refusing to equate a violation of Article 36 to a *Miranda* violation). Thus, the suppression remedy must be available, if at all, from the Vienna Convention itself. The Court, however, finds nothing in the Vienna Convention that provides for the

exclusionary rule as a remedy for violation of its provisions.

Parties that have sought relief through the Vienna Convention in other proceedings were required to show actual prejudice in order to be entitled to that relief. *See, e.g., Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (requiring a showing of actual prejudice for a habeas proceeding); *Waldron*, 17 F.3d at 518–19 (requiring a showing of prejudice to set aside a deportation order); *Salas*, 1998 WL 911731 at, *3 (requiring a showing of prejudice for a motion to suppress); *Esparza–Ponce*, 7 F.Supp.2d at 1097 (same). Similarly, the Court holds that in order for Chaparro–Alcantara and Romero–Bautista to invoke the exclusionary rule in this case, they must show that the denial of their consular notification rights resulted in actual prejudice to their case.

### C. Showing of Prejudice

■ In order to establish prejudice, Chaparro–Alcantara and Romero–Bautista filed the Affidavit of Fernando Gonzalez, Consul of Mexico who is assigned to St. Louis, Missouri. Consulate Gonzalez stated that if Chaparro–Alcantara and Romero–Bautista had contacted him while in the custody of the I.N.S., he would have advised them that they did not have to provide any information to the I.N.S. and that they could refuse to answer any questions. *See* Gonzalez Affidavit ¶ 4–5. He also stated that he would tell Chaparro–Alcantara and Romero–Bautista that any statements they made could be used against them, and assist them in obtaining competent legal representation. *See id.* at ¶ 4–5. Chaparro–Alcantara and Romero–Bautista also filed affidavits stating that had they been advised of their right to speak with their Consulate they would have done so, and they would have followed his advice and would not have answered any questions. *See* Chaparro–Alcantara Affidavit ¶ 4; Romero–Bautista Affidavit ¶ 7–8.

As noted before, the Defendants were given *Miranda* warnings before they were questioned by the I.N.S. agent. Consulate Gonzalez would have advised Chaparro–Alcantara and Romero–Bautista similarly, if not identically, to what *Miranda* requires. Thus, in order for Chaparro–Alcantara and Romero–Bautista to establish prejudice, they must show that had they been advised of their right to speak with the Consulate, they would have stopped answering questions and would not have waived their Fifth Amendment rights until they spoke to their Consulate.

In this case, although Chaparro–Alcantara and Romero–Bautista asserted that they would have exercised their right to speak with their Consulate and would have exercised their Fifth Amendment rights *after* speaking with their Consulate, they failed to show that they would not have waived their Fifth Amendment rights *before* speaking with the Consulate. Nothing in the Vienna Convention or the case law requires law enforcement officials to cease all interrogation until they speak to their consular official. Thus, the I.N.S. agents could have acquired Defendants' waiver of Fifth Amendment rights *even after* notifying Chaparro–Alcantara and Romero–Bautista of their right to speak to the Mexican Consulate. It is impossible to know at what point in time Chaparro–Alcantara and Romero–Bautista would have succeeded in actually speaking to the Mexican Consulate, even if the I.N.S. agents had given Chaparro–Alcantara and Romero–Bautista immediate notice of their right to speak with the Consulate and had forwarded their request to speak with him without delay.

In other words, Chaparro–Alcantara and Romero–Bautista failed to establish that they would have stopped talking to the I.N.S. immediately after being advised that they had a right to speak to the Mexican Consulate. Thus, based on the record in front of the Court, it is too speculative to conclude that Chaparro–Alcantara and Romero–Bautista were prejudiced by the Government's failure to advise them of their consular notification

rights. Accordingly, the Court declines to exclude the Defendants' statements.

Therefore, Defendants' Joint Motion to Suppress (d/e 54) is DENIED. All parties have represented to the Court that the Defendants cannot be tried together due to a *Bruton* problem. (*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)). Consequently, by agreement of the parties, the Court severs the Defendants' cases for trial. Due to the Government's election to try Defendant Chaparro–Alcantara first, the Court finds that the ends of justice served by postponing trial outweigh the best interest of Defendant Romero–Bautista and the public in having a speedy trial. 18 U.S.C. § 3161(h)(8)(A). Defendant Romero–Bautista's final pretrial date is reset to March 19, 1999, at 11:00 a.m., and the trial date is moved to April 6, 1999, at 9:00 a.m.