Israel ZAVALA, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–0003–CR–190.

Court of Appeals of Indiana.

Oct. 31, 2000.

Transfer Denied Jan. 17, 2001.

Rafael Ramirez, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant Israel Zavala (Zavala) appeals his convictions of dealing in cocaine, a Class A felony, Ind.Code § 35–48–4–1, and conspiracy to deal cocaine, a Class A felony, Ind.Code § 35–41–5–2. After the sentence and convictions, Zavala's appellate counsel filed a Motion to Correct Errors, requesting that the trial court vacate Zavala's sentence and convictions for the State's failure to comply with Article 36 of the Vienna Convention on Consular Relations. The trial court denied Zavala's motion.

We affirm.

### ISSUES

Zavala raises two issues for our review, which we restate as follows:

1. Whether the State's failure to inform Zavala of his rights under Article 36 of the Vienna Convention on Consular Relations, and the State's failure to notify the Mexican Consulate of Zavala's arrest prejudiced Zavala's fundamental rights of due process, and therefore his convictions and sentence should be vacated.

2. Whether Zavala was denied effective assistance of trial counsel for his counsel's failure to notify him of his rights under Article 36 of the Vienna Convention on Consular Relations.

### FACTS AND PROCEDURAL HISTORY

On October 21, 1998, police officers from the Hamilton County Drug Task Force initiated an investigation into reported criminal activity at 132 Dena Drive, Apartment D, Westfield, Indiana. The officers, together with a confidential informant, arranged for and made two purchases of cocaine from an individual at the residence. Shortly after the second controlled buy, the police officers executed a search warrant and entered the residence to search for drugs. Upon searching the residence, the police officers discovered Zavala in a bedroom. In the bedroom the police officers found approximately 17.53 grams of cocaine, 147.73 grams of marijuana, and a scale. The officers also found Zavala's Indiana driver's license, documents belonging to Zavala, and $300 of the $500 in marked bills that the confidential informant had used to make the second controlled buy. As the police arrested Zavala, they discovered evidence that established Zavala as a Mexican national.

On October 23, 1998, the State charged Zavala in a three count information as follows: Count I: dealing in cocaine, Ind. Code § 35–48–4–1, a Class A felony; Count II: conspiracy to deal cocaine, Ind. Code § 35–48–4–1 and Ind.Code § 35–41–5–2, a Class A felony; and Count III: dealing cocaine, Ind.Code § 35–48–4–1, a Class A felony. The jury could not reach a verdict on Count III and therefore the trial court declared a mistrial with respect to Count III. Zavala was found guilty of Count I and II and was sentenced to twenty (20) years in the Department of Correction on Count I, and twenty (20) years for Count II, the sentences to run concurrently.

During the sentencing phase of the trial, Zavala's trial counsel withdrew from the case, and Zavala's new counsel filed a Motion to Correct Errors. In the Motion to Correct Errors, Zavala raised the issue of

the State's violation of Article 36 of the Vienna Convention on Consular Relations by failing to notify Zavala of his right to contact the Mexican Consulate to assist him in his case. Until Zavala filed his Motion to Correct Errors, the Record was totally barren of any theory regarding Zavala's consular notification right. In his Motion to Correct Errors, Zavala requested that the trial vacate his convictions and sentence, asserting that the State's failure to grant him his right under the Vienna Convention amounted to fundamental error. Zavala attached to his Motion to Correct Errors an Affidavit of the Mexican Consul as well as an Affidavit of his former trial counsel. On February 3, 2000, the trial court denied Zavala's motion. Zavala now appeals.

### DISCUSSION AND DECISION

### I. *Article 36 of Vienna Convention on Consular Relations*

■ Zavala argues for the first time on appeal that his sentence and convictions should be vacated due to an alleged violation of the Vienna Convention. Zavala asserts that, as a Mexican national, his rights were violated because he was not advised of his right to contact the Mexican consulate for assistance following his arrest pursuant to article 36 of the Vienna Convention on Consular Relations. Vienna Convention on Consular Relations, April 24, 1963, art. 36, 21 U.S.T. 77, 100, 596 U.N.T.S. 261.

■ As Zavala failed to raise this issue during trial, he attempts to escape waiver of the issue by urging us to review his contention under the fundamental error doctrine. A party may escape waiver of an issue, based upon a failure to object, if the claimed error is fundamental in nature. *Charlton v. State,* 702 N.E.2d 1045, 1051 (Ind.1998), *reh'g denied.* "Fundamental error is a substantial blatant violation of basic principles rendering the trial unfair to the defendant and, thereby depriving the defendant of fundamental due

process." *Id.* In order to constitute fundamental error, the error must prejudice the rights of a defendant to such an extent that it makes a fair trial impossible. *Wiggins v. State,* 727 N.E.2d 1, 10 (Ind.Ct. App.2000), *trans. denied.* However, a party may not raise an issue for the first time in a motion to correct errors or on appeal. *Evans v. Tuttle by Tuttle,* 645 N.E.2d 1119, 1121 (Ind.Ct.App.1995). Therefore, we must determine whether article 36 of the Vienna Convention on Consular Relations creates a fundamental right. Unfortunately, neither Indiana nor the Seventh Circuit has addressed this issue.

The Vienna Convention is a 79–article, multilateral treaty to which the United States and Mexico are signatories. It was negotiated in 1963 and ratified by the United States in 1969, thereby becoming the supreme law of the United States. *See* U.S. Const. Art. VI, cl. 2. Its provisions cover a number of issues that require consular intervention or notification, including the death of a foreign national, the necessity of appointing a guardian or a trustee for a foreign national who is also a minor, the crash of a foreign airplane or the wreck of a foreign boat, and the arrest or detention of a consular officer. *See United States v. Lombera–Camorlinga,* 206 F.3d 882, 884 (9th Cir.2000). Article 36 deals with what a member state must do when a foreign national is arrested. It provides in relevant part:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> \* \* \* \* \*
>
> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or

detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

Vienna Convention, art. 36(b), 21 U.S.T. 77, 100–01, 596 U.N.T.S. 261 (April 24, 1963).

The parties concede that Zavala was not informed at any time following his arrest of his right to request assistance from the Mexican consular post. In his Motion to Correct Errors, Zavala argued that:

> The State of Indiana knew that this defendant [Zavala] was a foreign national since the time of his arrest, yet it failed to notify the defendant of his right to contact his own government as is required by Article 36 of the Vienna Convention on Consular Relations. Moreover, neither did the State of Indiana notify the United Mexican States that it had arrested its citizen. As a consequence of the State's failure, it thus denied said defendant due process rights to communicate with the consular officers of his country ... [and therefore] the most reasonable remedy at law would be to vacate the present conviction.

(R. 312, 314). The trial court denied the motion and Zavala's convictions and sentence were upheld.

■ We agree that a treaty is a law of the United States to be given the same force and effect as any other law. Further, in order for a defendant to raise a violation of a treaty, he must have standing. Therefore, the first issue we must address is whether the Vienna Convention conveys rights to individuals, providing them standing to contest violations of the treaty in a criminal proceeding. We find it does.

■ Generally, individuals do not have standing to bring suit based on an international treaty when sovereign nations are not involved in the dispute. *United States v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1095 (S.D.Cal.1998), *aff'd,* 193 F.3d 1133 (9th Cir.1999), *cert. denied.* However, a private action can arise under a treaty when the treaty expressly or by implication confers rights on individuals. *See Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 442, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Thus, the issue becomes whether the Vienna Convention explicitly or implicitly confers on individuals a private enforceable right to contest violations of the treaty.

The language of the Vienna Convention states that law enforcement officials shall inform a foreign national who has been arrested imprisoned or taken into custody of his "right" to contact the consul. However, the introductory sentence of article 36 indicates that this provision is not designed to benefit individuals, but rather seeks to "facilitat[e] the exercise of consular functions...." Convention art. 36. Moreover, the preamble to the Vienna Convention on Consular Relations states: "that the purpose of [consular] privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States." 21 U.S.T. at 79.

Furthermore, many courts, including the United States Supreme Court have suggested that a party does have an individual "right" under the Vienna Convention that grants the party "standing" to seek redress from an alleged violation of the treaty. Specifically, the Supreme Court stated that "[b]y not asserting his Vienna Convention claim in state court, [the defendant] failed to exercise his rights under the Vienna Convention .... [and that the Convention] arguably confers on an individual the right to consular assistance following arrest." *Breard v. Greene,* 523 U.S. 371, 375–376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998); *Villafuerte v. Stewart,* 142 F.3d 1124 (9th Cir.1998) (entertaining a claim of a violation of the Convention without discussing the standing issue); *Faulder v. Johnson,* 81 F.3d 515, 520 (5th Cir.1996), *cert. denied* (same); *United*

States v. Chaparro–Alcantara, 37 F.Supp.2d 1122, 1125 (C.D.Ill.1999), *aff'd*, 226 F.3d 616, 2000 WL 1182450 (7th Cir.(Ill.) August 21, 2000) (same); *Esparza–Ponce*, 7 F.Supp.2d at 1096; *But see Republic of Paraguay v. Allen*, 949 F.Supp. 1269, 1274 (E.D.Va.1996) (suggesting that the Convention does not confer private enforceable rights), *aff'd*, 134 F.3d 622 (4th Cir.1998), *cert. denied.*

■ Thus, the United States Supreme Court did not definitively find that the Vienna Convention confers on an individual the right to consular assistance following arrest, and no federal court has ruled that the Vienna Convention confers on individuals such a private enforceable right. Even if we were to hold that Article 36 confers on individuals a private judicially enforceable right—which we decline to so hold – the language of the Vienna Convention does not justify the inference that a violation of such rights should be remedied via the suppression of evidence or the dismissal of an indictment. As discussed below, these remedies are generally reserved for extraordinary encroachments upon the most fundamental individual rights. *United States v. Li*, 206 F.3d 56, 62–63 (1st Cir.2000). Thus, we need not definitively decide the standing issue because we find that Zavala's claim fails for reasons discussed below.

As previously mentioned, it is undisputed that the police officers violated the Vienna Convention by failing to advise Zavala of his right to contact the Mexican consul. As a result, Zavala argues that dismissal of his convictions is the necessary remedy because the State's failure to comply with Article 36 of the Vienna Convention amounts to fundamental error. However, Zavala fails to recognize the difference between fundamental, constitutional rights and those rights created by statute or treaty. Therefore, the next issue we must decide is whether the exclusionary rule is a remedy that is available to redress a violation of Article 36, and

whether Zavala met the evidentiary burden to invoke the exclusionary rule.

■ It is well established that the exclusionary rule is applied generally to deter the police from violating a person's constitutional rights. *See Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[the exclusionary rule's] purpose is to deter – to compel respect for constitutional guaranty in the only effectively available way – by removing the incentive to disregard it"); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Generally, unless a statute expressly provides otherwise, the exclusionary rule is not available as a remedy for a violation of the statute. *Chaparro–Alcantara*, 37 F.Supp.2d at 1125. Therefore, in order for Zavala to invoke the exclusionary rule in this case to dismiss his convictions, the Vienna Convention must explicitly provide for that remedy, or the violation of the treaty must rise to a level of a constitutional violation.

We find persuasive the language of the district court in *United States v. Chaparro–Alcantara*, 37 F.Supp.2d 1122 (N.D.Ill. 1999):

It is clear that Article 36 does not create a "fundamental" right, such as the Sixth Amendment right to counsel, of the Fifth Amendment right against self-incrimination which originates from concepts of due process. *See Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir.1993) [*cert. denied* ] ("[a]lthough compliance with our treaty obligations clearly is required, we decline to equate such a provision with fundamental rights ..."); *Esparza–Ponce*, 7 F.Supp.2d at 1097 (refusing to equate a violation of Article 36 to Miranda violation). Thus, the suppression remedy must be available, if at all, from the Vienna Convention itself. The Court, however, finds nothing in the Vienna Convention that provides for the exclusionary rule as a remedy for violation of its provisions.

*Id.* at 1125–26.

In addition, we find persuasive the First Circuit's language in *Li*, 206 F.3d at 62,

with respect to article 36 of the Vienna Convention:

> Nor are such defendants entitled to the dismissal of an indictment: 'Because the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step.' *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir.1997) [*cert. denied*]; *see also United States v. Morrison*, 449 U.S. 361, 365 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) [*reh'g denied*] (concluding that the dismissal of an indictment was unwarranted absent a constitutional violation that prejudiced defendant's case); *Whitehouse v. United States Dist. Court for Dist. Of Rhode Island*, 53 F.3d 1349, 1359 (1st Cir.1995) ("When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. The power is appropriately reserved, therefore, for extremely limited circumstances."); *United States v. Carrillo*, 70 F.Supp.2d 854, 862 (N.D.Ill. 1999) (holding that violation of Vienna Convention would not require suppression of evidence or dismissal of indictment). Thus, we will infer neither an entitlement to suppression nor an entitlement to dismissal absent express, or undeniably implied, provision for such remedies in a treaty's text. We find no such provision here.

*Id.*

While the Vienna Convention is facially ambiguous on the subject of whether it creates individual rights to enforce violations of the treaty, it fails to address whether those individual rights would justify suppression of evidence or the dismissal of an indictment. Specifically, the United States Supreme Court has held that "neither the text nor the history of the Vienna Convention clearly provides a ... private right of action in United States' courts to set aside a criminal conviction and sentence for violation of consular notification provisions." *Breard*, 523 U.S. at 377, 118 S.Ct. 1352, 140 L.Ed.2d 529.

Therefore, assuming without deciding that Zavala has standing to challenge a violation of the Vienna Convention, his claim for dismissal of his convictions and sentence must be rejected.

In so ruling, we follow the analysis of the United States District Court of Utah in *United States v. Tapia–Mendoza*, 41 F.Supp.2d 1250 (D.Utah 1999), which in turn followed the Second, Fourth, Fifth, and Ninth circuits, which imposed a requirement that actual prejudice resulting from the alleged violation must be shown before obtaining a remedy. *Id.* at 1253; *See, Murphy v. Netherland*, 116 F.3d 97 (4th Cir.1997)[*cert. denied*]; *Faulder v. Johnson*, 81 F.3d 515 (5th Cir.1996); *Waldron v. Immigration and Naturalization Serv.*, 17 F.3d 511 (2d Cir.1993); *United States v. Villa–Fabela*, 882 F.2d 434 (9th Cir.1989).

In *Murphy*, the Fourth Circuit set forth the following rationale for such a requirement:

> [E]ven if the Vienna Convention on Consular Relations could be said to create individual rights (as opposed to setting out the rights and obligations of signatory nations), it certainly does not create constitutional rights. Although states may have an obligation under the Supremacy Clause to comply with the provisions of the Vienna Convention, the Supremacy Clause does not convert violations of treaty provisions (regardless whether those provisions can be said to create individual rights) into violations of constitutional rights. Just as a state does not violate a constitutional right merely by violating a federal statute, it does not violate a constitutional right merely by violating a treaty.

*Murphy*, 116 F.3d at 99. We agree with the analysis in *Murphy* and conclude that the fundamental error doctrine is inapplicable to the instant case because no violation of a fundamental right is implicated. *See also United States v. Ademaj*, 170 F.3d 58 (1st Cir.1999), *cert. denied* (holding that an alleged violation of the Conven-

tion would not be considered plain error on appeal). Thus, because Zavala failed to raise the State's violation of the Vienna Convention at trial, and because we conclude that this issue does not rise to the level of fundamental error, Zavala has waived this issue.

Nevertheless, waiver notwithstanding, Zavala cannot show actual prejudice as a result of the State's failure to notify him of his right under the Vienna Convention. The court in *Tapia–Mendoza* recognized that the Supreme Court adopted the prejudice standard in *Breard,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529, where the petitioner's claim arising under Article 36 of the Vienna Convention was procedurally barred. *Tapia–Mendoza,* 41 F.Supp.2d at 1254. Nevertheless, the Court in *Breard* considered the prejudice issue and concluded that even if given opportunity for a hearing, the petitioner likely would have failed to show adequate prejudice to overturn the lower court's decision. *Id.* In this regard, the Court stated:

> Even were Breard's Vienna Convention claim properly raised and proven, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial.... Breard's asserted prejudice – that had the Vienna Convention been followed he would have accepted [a guilty plea] – is far more speculative than the claims of prejudice courts routinely reject in those cases were [sic] an inmate alleges that his plea was infected by attorney error.

*Tapia–Mendoza,* 41 F.Supp.2d at 1254 (quoting *Breard,* 523 U.S. at 377).

The United States District Court for the Central District of Illinois set forth a three prong test concerning the sufficiency of a defendant's evidence of prejudice. To establish prejudice, a defendant must show that: (1) he did not know of his right to contact the consulate for assistance; (2) he would have availed himself of the right

had he known of it; and (3) there was a likelihood that the consulate would have assisted the defendant. *Chaparro–Alcantara,* 37 F.Supp.2d at 1126.

In order to establish prejudice, Zavala attached to his Motion to Correct Errors the Affidavit of Joaquin Pastrana, a Foreign Service Officer with the Consulate General of Mexico in Chicago, Illinois. Consulate Pastrana stated that he is the Consul for Legal Affairs and Human Rights Department and provides support to Mexican citizens who become involved with the legal system of the United States. He also stated that he was familiar with Article 36 of the Vienna Convention on Consular Relations and that the Mexican Consulate's policy is to inform any Mexican citizen who has been arrested or under suspicion of criminal wrongdoing within the borders of the United States that he has a right to contact his consular representative for assistance. Further, Consulate Pastrana stated that:

> [i]t is our purpose to help the citizen make thoughtful and rational decisions about his important legal choices, including potential immigration consequences arising from said choices, and to avoid situations in which the citizen might make decisions out of fear or intimidation naturally present in any situation involving exposure to foreign police authorities.

(R. 321). Therefore, although Consulate Pastrana stated in his Affidavit the policies of the Mexican Consulate with respect to Article 36 of the Vienna Convention on Consular Relations, he did not provide any information regarding Zavala specifically. Nowhere in Consulate Pastrana's Affidavit did he state that if Zavala had contacted him while in custody, he would have advised him that he did not have to provide any information to the police, that he could refuse to answer any questions, that any statements he made could be used against him, or that he would assist him in obtaining legal representation.

Although Zavala asserted in his Motion to Correct Errors that he would have exercised his right to speak with his Consulate, he failed to show that he would have exercised his Fifth Amendment rights after speaking with his Consulate. In fact, Zavala merely claims that he was prejudiced by the State's failure to inform him of his right under Article 36 of the Vienna Convention, however, he fails to articulate specifically how he was prejudiced. Further, as noted in *Chaparro–Alcantara*, "nothing in the Vienna Convention or the case law requires law enforcement officials to cease all interrogation until they speak to their consular official." *Chaparro–Alcantara*, 37 F.Supp.2d at 1126. Without any evidence to establish what Zavala would have done if he had been provided immediate notice of his right to speak with the Consulate, we find it too speculative to conclude that Zavala was prejudiced by the State's failure to advise him of his consular notification. Therefore, although Zavala requests that we vacate his convictions and sentence, he fails to provide us with any evidence as to how he was actually prejudiced in order for us to do so. Because we find that Zavala's claim does not rise to the level of fundamental error, and because he has failed to establish actual prejudice as a result of the State's failure to inform him of his rights under Article 36 of the Vienna Convention on consular Relations, we decline to vacate Zavala's convictions and sentence.

## II. *Ineffective Assistance of Counsel*

■ Zavala next argues that he received ineffective assistance of trial counsel. Specifically, Zavala asserts that because his trial counsel failed to inform him of his rights under Article 36 of the Vienna Convention on Consular Relations, he was denied the opportunity to receive assistance in his trial from the Mexican Consulate.

■ The standard by which we review claims of ineffective assistance of counsel is well settled. In order to prevail on a claim of this nature, a defendant must satisfy a two prong test: (1) a showing that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) a showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind.1997) *reh'g denied, cert. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). However, we need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

■ To establish prejudice, Zavala must first demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. *See Smith v. State*, 689 N.E.2d 1238, 1244 (Ind.1997). Isolated poor strategy or bad tactics do not necessarily amount to ineffective assistance of counsel unless, taken as a whole, the defense was inadequate. *Brown v. State*, 698 N.E.2d 1132, 1139 (Ind.1998), *reh'g denied, cert. denied.* Furthermore, we "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998).

In this case, Zavala attached to his Motion to Correct Errors an Affidavit of his trial counsel, Alberto Berrones. In his Affidavit, Berrones stated that he was not aware of Article 36 of the Vienna Convention on Consular Relations or Zavala's rights as a Mexican national pursuant to the treaty. Therefore, he did not inform Zavala of his right to contact the Mexican Consulate for assistance following his arrest. Further, Berrones stated that his

ignorance and incompetence resulted in an injustice to Zavala.

Nevertheless, as previously discussed, Zavala has failed to establish actual prejudice by demonstrating that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. Specifically, Zavala has failed to demonstrate the probability that the outcome of his trial would have been different had he been given notification of his right under the Vienna Convention. Because Zavala has failed to demonstrate prejudice as a result of both the State's and Berrones' failure to notify him of this right under the Vienna Convention, we conclude that Zavala's trial counsel was not ineffective.

## CONCLUSION

Based on the foregoing, we hold that the State's failure to inform Zavala of his rights under Article 36 of the Vienna Convention on Consular Relations, and the State's failure to notify the Mexican Consulate of Zavala's arrest did not prejudice Zavala's fundamental rights of due process, and therefore his convictions and sentence should not be vacated. Moreover, Zavala was not denied effective assistance of trial counsel for his counsel's failure to notify him of his rights under Article 36 of the Vienna Convention on Consular Relations.

Affirmed.

BARNES, J., and BAILEY, J., concur.