Rodolfo ALEXANDER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–0508–CR–452.

Court of Appeals of Indiana.

Nov. 22, 2005.

Bridgette F. Greene, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Rodolfo Alexander appeals his conviction for Murder,[1] a felony. Specifically, Alexander argues that the evidence was insufficient to support the conviction because the State failed to establish that he aided or assisted in the commission of the offense. Alexander also asserts that his sentence must be set aside because the trial court considered improper aggravating circumstances and did not accurately balance the aggravating and mitigating circumstances. Finding no error, we affirm the judgment of the trial court.

### FACTS

The facts most favorable to the judgment are that during the evening of August 13, 2003, Alexander and some others were in an Elkhart city park playing basketball. At some point, one of the men in the group—Edward Brena—noticed that Ignacio Bahena was carrying a gun that Brena had previously given to Alexander. When Brena asked about the gun, Alexander responded that Bahena needed it for protection. While at the park, Bahena told the group that he was angry with Jesus Gonzalez and that he was going to shoot him as an act of revenge.

Some of the individuals in the group eventually entered a Chevy Tahoe that Alexander was driving. Bahena was in the front passenger seat. Another group left the park in a green pickup truck that was driven by Sergio Oviedo. At some point, Bahena noticed Gonzalez drive by in a red Mustang. Bahena then stated that he wanted to fight Gonzalez. As a result, Bahena signaled Oviedo to position his truck in front of the red Mustang. Once the Mustang stopped, Alexander drove the Tahoe alongside Gonzalez's vehicle. Bahena drew a gun, cocked it, stated to Gonzalez that he was going to get him, and fired several shots at Gonzalez. Alexander watched the incident, and the green pickup truck drove away as soon as the shooting began. Alexander and his group fled the scene once Bahena stopped shooting. Bahena had shot Gonzalez a total of five times. Although Gonzalez survived, his girlfriend—who was riding as a passenger in the Mustang—died from a fatal gunshot wound to the head.

Immediately after the incident, Alexander drove to the residence of Francisco Moreno, where he asked Moreno to hide the gun for him. Moreno took the gun and buried it in a plastic bag. Thereafter, Alexander drove to Martin Torres's residence where he asked to hide the vehicle in his garage. Torres could not keep the vehicle in his garage, as it was already full. Alexander then returned to Moreno's residence and retrieved the gun.

On June 14, 2004, Alexander was charged with murder. Following a jury trial that commenced on March 7, 2005, Alexander was found guilty as charged. At sentencing, the trial court identified the following aggravating factors: (1) multiple victims were involved; (2) Alexander fled the jurisdiction with other charges pending; (3) Alexander was an illegal alien in this country; and (4) Alexander could have prevented the offense from occurring be-

---

1. Ind.Code § 35–42–1–1.

cause he was in control of the vehicle. The trial court also found the following mitigating factors: (1) Alexander's young age; (2) Alexander had no prior convictions; (3) Alexander was not the trigger man; (4) he showed some cooperation with the police during their investigation of the crime; and (5) Alexander may have had some mental health issues. In the end, the trial court sentenced Alexander to an executed term of fifty-five years, the presumptive sentence for murder. He now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Alexander first contends that the evidence was insufficient to support his conviction. Specifically, Alexander claims that the conviction must be set aside because the State failed to present any evidence establishing that he acted as an accomplice to the murder.

In resolving this issue, we first note that when reviewing a challenge to the sufficiency of the evidence, we decline to reweigh the evidence and substitute our judgment for that of the trial court. *Soward v. State*, 716 N.E.2d 423, 425 (Ind. 1999). Rather, we will examine only the evidence and the reasonable inferences that support the judgment. *Robinson v. State*, 814 N.E.2d 704, 707 (Ind.Ct.App. 2004). A claim of insufficient evidence will prevail if no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *See Torres v. State*, 673 N.E.2d 472, 473 (Ind.1996).

■ We also observe that an individual may be convicted for aiding, inducing, or causing another to commit a criminal offense. Ind.Code § 35–41–2–4. A person who aids another in committing a crime is just as guilty as the actual perpetrator. *Vandivier v. State*, 822 N.E.2d 1047, 1054

(Ind.Ct.App.2005), *trans. denied.* To be convicted as an accomplice, it is not necessary for a defendant to have participated in every element of the crime. *Bruno v. State*, 774 N.E.2d 880, 882 (Ind.2002). Various factors used to determine whether a conviction under an accomplice liability theory was sustained by the evidence include: (1) a defendant's presence at the scene of the crime; (2) a defendant's companionship with another engaged in criminal activity; (3) a defendant's failure to oppose commission of the crime; and (4) the defendant's course of conduct before, during, and after the occurrence of the crime. *Garland v. State*, 788 N.E.2d 425, 431 (Ind.2003). While neither a defendant's presence at the crime scene nor his failure to oppose the crime are sufficient alone to sustain a conviction under an accomplice liability theory, these factors may be used along with other facts and circumstances to establish a defendant's guilt as an accomplice. *Vandivier*, 822 N.E.2d at 1054. Also, a defendant's conviction under an accomplice liability theory will be sustained on appeal where there is evidence of the defendant's affirmative conduct, either by words or acts, from which an inference of a common design or purpose to effect the commission of a crime may reasonably be drawn. *Id.*

In this case, Alexander was driving the Tahoe and heard Bahena, who was a passenger in that vehicle, state that he was going to shoot Gonzales. Tr. p. 299, 303–04. Moreover, Alexander supplied the weapon to Bahena that was used in the shooting. Tr. p. 295. The evidence also showed that Alexander positioned his vehicle in such a way as to permit Bahena to shoot the victims.

Additionally, Alexander did nothing to prevent the shooting when Bahena pulled the gun, pointed it at Gonzalez and cocked it. Tr. p. 182–83; 266, 300, 303–05, 325–

26. Rather, the evidence demonstrated that Alexander watched Bahena as he fired the gun. Alexander also drove away from the crime scene to a friend's home where he convinced that person to hide the gun. Tr. p. 184–85, 210–14, 273–74, 304–05. In light of these circumstances, we conclude that there was enough evidence for the jury to infer a common design or purpose to effect the crime. Hence, the evidence was sufficient to sustain Alexander's conviction for murder on the basis of accomplice liability.

## II. Sentencing

### A. Aggravating Circumstances

Alexander next argues that he was improperly sentenced. In particular, Alexander contends that the trial court erroneously identified a number of aggravating factors, and that it improperly weighed the aggravators against the mitigating circumstances that were found.

■ In resolving this issue, we initially observe that the trial court sentenced Alexander to fifty-five years of incarceration, the presumptive sentence for murder.[2] A trial court is required to provide a statement of reasons and a statement of aggravating and mitigating circumstances only when it increases or decreases the presumptive sentence. *Merlington v. State*, 814 N.E.2d 269, 272 (Ind.2004). The presumptive sentence for a particular offense is the starting point for the review of inappropriate sentence claims. *Hayden v. State*, 830 N.E.2d 923, 928 (Ind.Ct.App. 2005), *trans. denied*. Finally, we note that in accordance with Indiana Code section 35–38–1–7.1(c), a trial court is permitted to consider any matter relevant to the peculiar facts of the case that may be deemed an aggravating circumstance.

As set forth above, the trial court found the existence of several aggravating factors. Alexander, however, seems to challenge only the determination of two of those factors: (1) his status as an illegal alien; and (2) the finding that he was facing other pending charges while he was on bond for this offense. Appellant's Br. p. 4–5.

■ Alexander argues that the trial court should not have considered his status as an illegal alien as an aggravating circumstance, inasmuch as his parents brought him into the United States as a child, and he "had no choice in the matter." *Id.* at 4. However, Alexander was certainly not a youngster when he committed this offense, and he could have rectified his illegal alien status by returning to his native country or by applying for a visa in this country. Moreover, the record shows that Alexander held a seemingly valid Indiana driver's license when he was arrested. Appellant's App. p. 69. In light of Alexander's status as an illegal alien in this country, he could only have obtained that license by presenting false documentation to the Bureau of Motor Vehicles and committing perjury on the application. As a result, these circumstances demonstrate Alexander's patent disregard for the laws of this country and this State. Hence, we conclude that the trial court did not err in considering Alexander's alien status as an aggravating circumstance.

■ Next, Alexander contends that the trial court improperly considered his flight from the jurisdiction while awaiting trial on other pending charges as an aggravating circumstance. As the basis for his argument, Alexander asserts that "the record does not support that [finding]." Appellant's Br. p. 4. To the contrary, Alexander's flight from the jurisdiction and the

---

**2.** Ind.Code § 35–50–2–3(a).

allegation that his bond had been revoked were set forth in the pre-sentence investigation report. Tr. p. 10–11. Moreover, inasmuch as Alexander made no objection to this finding at the sentencing hearing, he cannot now complain that such a determination was erroneous. *See Chupp v. State*, 830 N.E.2d 119, 126 n. 12 (Ind.Ct. App.2005) (observing that the defendant's failure to object or make any factual challenge to the pre-sentence investigation report is tantamount to an admission to the accuracy of the facts contained therein). As a result, Alexander's arguments challenging the trial court's findings of aggravating circumstances must fail.

### B. Inappropriate Sentence

▓▓▓▓ Finally, we note that Alexander appears to be arguing that the imposition of the presumptive sentence was inappropriate in light of the nature of the offense and his character. This court will not revise a sentence authorized by statute unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *Boner v. State*, 796 N.E.2d 1249, 1254 (Ind. Ct.App.2003). But we must exercise great restraint in reviewing and revising sentences and recognize the special expertise of the trial bench in making sentencing decisions. *Wilkie v. State*, 813 N.E.2d 794, 802 (Ind.Ct.App.2004), *trans. denied.*

The circumstances here involved a senseless drive-by shooting that left an innocent person dead and another seriously wounded. As for Alexander's character, his disregard for the law is illustrated by his decisions to remain an illegal alien and to flee the jurisdiction while he was on bond. Moreover, Alexander chose to supply his friends with deadly weapons, and he did nothing to prevent the shooting. As a result, we find the imposition of the presumptive sentence appropriate in this case.

The judgment of the trial court is affirmed.

RILEY, J., concurs in result.

MATHIAS, J., concurs with opinion.

MATHIAS, Judge, concurring.

I fully concur with the majority's determination of the issues presented in this appeal under current Indiana law. However, because Alexander is a Mexican foreign national, I write separately to address his rights under the 1963 Vienna Convention on Consular Relations.

Under the Vienna Convention, a foreign national who has been arrested, imprisoned, or taken into custody must be informed of his right to contact the consular officers of his country.[3] *See Zavala v. State*, 739 N.E.2d 135, 139 (Ind.Ct.App. 2000), *trans. denied.* The United States is a signatory to the Vienna Convention.

The record in this case does not reveal whether Alexander was informed that he had a right to contact the Mexican consul. While this Vienna Convention right to contact a consular officer is an important right that should not be ignored under any circumstance, failure to inform a defendant of his or her Vienna Convention right is particularly egregious in cases such as the one before us, where risk of conviction of the charged crime carries such a high penalty.

American citizens abroad would like to believe that they will be treated fairly if they have a misfortune that subjects them

---

**3.** However, the *Zavala* panel determined that failure to raise the State's violation of the Vienna Convention at trial results in waiver of that issue and the "fundamental error doctrine is inapplicable ... because no violation of a fundamental right is implicated." *Id.* at 142–43.

to the police, prosecutorial and penal authorities of a country they are visiting. But confidence in such fair treatment is unwarranted if we as a nation do not set an example in our treatment of foreign nationals under similar circumstances in United States courts. I would therefore urge law enforcement authorities to make such advice of a foreign national's right to consular contact standard operating procedure in order to help establish an efficient and objectively fair notice and contact process that compliments the Sixth Amendment indigent right to counsel.