142 F.3d 1124
 97 Cal. Daily Op. Serv. 2964, 98 Daily Journal
D.A.R. 4071
Jose Roberto VILLAFUERTE, Petitioner-Appellant,
v.
Terry STEWART, in his capacity as Director of the Arizona
Department of Corrections; and Grant Woods,
Attorney General of the State of
Arizona, Respondents-Appellees.
 No. 98-80303.
 United States Court of Appeals,
Ninth Circuit.
 April 20, 1998.
 
 Jennifer A. Sparks, Daniel D. Maynard, and Douglas C. Erickson, Maynard, Murray, Cronin, & O'Sullivan, Phoenix, AZ, for petitioner-appellant.
 Jack Roberts, Assistant Attorney General, Phoenix, AZ, for respondents-appellees.
 Before: FLETCHER, THOMPSON and T.G. NELSON, Circuit Judges.
 
 
 1
 Arizona death row inmate Jose Roberto Villafuerte has filed a petition, pursuant to 28 U.S.C. § 2244(b)(3), for an order of this court authorizing him to file a successive petition for writ of habeas corpus in the district court. For a description of the crime and prior proceedings, see Villafuerte v. Stewart, 111 F.3d 616 (9th Cir.1997), and State v. Villafuerte, 142 Ariz. 323, 690 P.2d 42 (1984).
 
 
 2
 Section 2244(b) requires the dismissal of claims not presented in prior petitions unless they rely on either a new rule of constitutional law or a showing of actual innocence. Claiming to meet these requirements, Villafuerte proposes to raise three issues in the district court, if authorized to do so:1. Violation of Villafuerte's rights under the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77.
 
 
 3
 2. Lack of a fair hearing on his second petition for Post-Conviction Relief due to the racial bias of the judge; and
 
 
 4
 3. Newly discovered evidence providing a basis to assert his actual innocence.
 
 
 5
 We will address each proposed issue in turn.
 
 A. The Vienna Convention
 
 6
 It is undisputed that Arizona officials did not notify Villafuerte of his right to consult with officials of the Honduran consulate when he was arrested in February, 1983. This omission arguably violated the terms of the Vienna Convention on Consular Affairs, 21 U.S.T. 77. So far as relevant here, Article 36 of the Convention requires a detaining state to inform a detained foreign national of his right to consult with consulate officials. It also requires the detaining state, if requested by the prisoner, to inform consular officials of the arrest and detention, and to allow consular officials to visit and consult with the prisoner. (See concurring opinion of Judge Butzner in Breard v. Pruett, 134 F.3d 615, 621-22 (4th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), for the terms of Article 36 of the treaty.)
 
 
 7
 Villafuerte contends that this claimed breach of the Convention is properly the subject of his proposed habeas petition. The Supreme Court of the United States recently rejected a similar argument by a Paraguayan national sentenced to death in Virginia, on the basis that the claim was procedurally defaulted by the petitioner's failure to raise it in state court. Breard v. Greene, --- U.S. ----, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998).
 
 
 8
 Villafuerte attempts to distinguish his claim from Breard's by pointing out that he did present this claim to the courts of Arizona. Villafuerte did present this claim to the courts of Arizona, but not until his third Post-Conviction Relief (PCR) petition, filed February 26, 1998. The claim is clearly procedurally defaulted, and the Arizona Superior Court so held in rejecting the claim on April 1, 1998.
 
 
 9
 However, procedural default is not the hurdle this claim stumbles over. 28 U.S.C. § 2244 requires the dismissal of claims not presented in prior habeas petitions unless one of two enumerated exceptions ("gateways") is found to exist. Villafuerte's proposed claim would have to come within § 2244(b)(2)(A) as a "new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, ..."
 
 
 10
 As the Supreme Court pointed out in Breard, the Convention has been in effect since 1969. If we were, for the sake of argument, to equate rights under the treaty to rights under the Constitution, those rights are certainly not new nor "previously unavailable." This proposed claim cannot pass through the "new rule" gateway of § 2244 and must be rejected. Nor does the failure to inform Villafuerte of his Vienna Convention rights meet the requirements of § 2244(b)(2)(B).
 
 B. Judge Goodfarb
 
 11
 Villafuerte's second PCR petition in state court was heard by Superior Court Judge Stanley Z. Goodfarb. After Judge Goodfarb filed a 65-page order denying relief to Villafuerte, Villafuerte moved to disqualify him on the basis that he was prejudiced in favor of John Rood, Villafuerte's trial counsel, who was the subject of claims of ineffective assistance of counsel. The motion was referred to another judge of the court, who denied it and sent the case back to Judge Goodfarb. The Arizona Supreme Court denied review of Judge Goodfarb's order, without comment. On Villafuerte's prior appeal, we affirmed the district court's denial of relief on that claim. Villafuerte, 111 F.3d at 632.
 
 
 12
 The Arizona Supreme Court suspended Judge Goodfarb in August of 1994 for using a racial epithet and profane comments. Matter of Goodfarb, 179 Ariz. 400, 880 P.2d 620 (1994). Villafuerte's counsel brought the suspension to our attention in a supplemental brief filed just prior to oral argument, asking us to take judicial notice as further proof of Judge Goodfarb's bias. We declined to consider the issue. Villafuerte, 111 F.3d at 633. Villafuerte's proposed new claim is that Judge Goodfarb was a racist, he was therefore biased against Villafuerte, and therefore Villafuerte was denied due process in his state PCR proceeding. He has offered no proof that Judge Goodfarb was a racist, other than the Matter of Goodfarb decision, even though he has had since August 30, 1994, in which to investigate.
 
 
 13
 Matter of Goodfarb involved the judge's use of profanity on several occasions, and the use of the term "fucking niggers" on one occasion in an unrelated case. The Arizona Supreme Court specifically noted the finding by the Arizona Commission on Judicial Conduct that the racial slur had "occurred more than four years before the hearing and no comparable incident had since been reported to the Commission." 880 P.2d at 621.
 
 
 14
 Villafuerte seeks to present this claim through the second "gateway" provided by § 2244(b)(2). To qualify for relief under this section, the claim must rely on a factual predicate that "could not have been discovered previously through the exercise of due diligence;" and "the facts underlying the claim, if proved and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."
 
 
 15
 The minimal showing of Judge Goodfarb's claimed bias has nothing to do with Villafuerte's actual innocence of the crime. The evidence of Villafuerte's guilt, while not overwhelming, was certainly sufficient to support the verdict. A showing that, on one occasion, Judge Goodfarb used a racial epithet does not add to or subtract from the evidence of Villafuerte's guilt. Certainly it does not demonstrate, by clear and convincing evidence, that Villafuerte is actually innocent of the crime for which he stands convicted. This proposed claim does not present a prima facie showing of actual innocence as required by § 2244(b)(3)(C) and must be rejected.
 
 C. Newly Discovered Evidence
 
 16
 Villafuerte told the police and his lawyer that he had bound the victim and left her in the trailer. "Robert" and "Fernando" and perhaps one other person were there when he left, according to one version of his story. (See 111 F.3d at 625, n. 4 for another.) He claimed to have asked them to release the victim when she had calmed down.
 
 
 17
 Attempts by the police and Villafuerte's lawyer to locate the people were hampered by Villafuerte's refusal to provide descriptions of them. Ultimately, they were not found, and so did not testify at trial.
 
 
 18
 Prior to the hearing on his second PCR petition, an investigator working for Villafuerte's lawyer found Robert Grady in prison in California. Grady spoke to her about events generally surrounding his knowledge of Villafuerte, but refused to give her a written statement. Grady did not testify by deposition or in person at the hearing on the second PCR and the investigator's proffered hearsay statement was rejected at that hearing.
 
 
 19
 On April 15, 1998, Robert Grady signed an affidavit in Florida. In it he acknowledged living in a trailer park near Villafuerte for a time in 1983. He said that Villafuerte was having a consensual sexual relationship with the victim, and that she at times lent Villafuerte her car. He also said "In 1983, I was a transient with no known address and spent much time hitchhiking across the country."
 
 
 20
 As with the second claim, Villafuerte seeks to get this claim through the actual innocence gateway of § 2244. The 1998 Robert Grady statement was never presented at trial, but not because of anything wrong done by Villafuerte's lawyer, or the police, or the prosecution. He was simply not available. When Grady was located prior to the hearing on the second PCR petition, Villafuerte's counsel did not try to arrange for his appearance at the hearing or depose him or otherwise try to preserve his testimony for use in that proceeding. There is nothing in the record to show a trial error by anyone associated with the case.
 
 
 21
 Villafuerte's problem is a basic one under the statute: He has not shown, or even attempted to show, a constitutional error, as it requires. The Grady evidence was not presented at trial due to Grady's peripatetic lifestyle, but not as a result of an error of any kind, much less constitutional error. This claim does not meet the actual innocence standard of § 2244(b)(2).
 
 
 22
 Even if the Grady testimony could be considered, it does not provide a prima facie showing of actual innocence. While it would perhaps corroborate the existence of Robert and Fernando, it does not provide a potential showing, by clear and convincing evidence, of Villafuerte's innocence. Central to Villafuerte's story was his contention that Roberto and Fernando were there when he left and therefore must have bound her in the manner that led to her death. Grady's affidavit is totally silent on this critical factor.
 
 
 23
 The petition for authority to file a successive petition for writ of habeas corpus in the district court and the motion for a stay of the execution are DENIED.