**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT


JEFFREY TIMOTHY LANDRIGAN, )          No. 10-73241
                                    )
            Petitioner-Appellant,   )
                                    )
            v.                      )          **ORDER**
                                    )
ERNEST TRUJILLO, Warden of          )
Arizona State Prison Complex-Eyman, )
                                    )
            and                     )
                                    )
CHARLES L. RYAN, Director of the    )
Arizona Department of Corrections,  )
                                    )
            Respondents-Appellees.  )
_____  )


Before:     RYMER, WARDLAW, and W. FLETCHER, Circuit Judges.

    Arizona death-row prisoner Jeffrey Landrigan asks this court for

authorization to file a second or successive (SOS) application for a writ of habeas

corpus in district court pursuant to 28 U.S.C. § 2244(b)(2).  He also seeks a stay of

his scheduled execution date of October 26, 2010.[1]  We deny both requests.

_____

    [1]  To the extent Landrigan also asks this court to convene an en banc panel to
consider his request to file an SOS petition as an initial matter, the request is
denied as an application to file an SOS petition must be heard by a three-judge

(continued...)

Chester Dean Dyer's body was found in his apartment on December 15, 1989 after he failed to show up for work.[2]  On December 13, 1989, before his death, Dyer had called a friend, Michael, and told Michael he had picked up a man known to him as "Jeff."  In another phone call a few minutes later Dyer told Michael that he was currently having sexual intercourse with Jeff.  In a third call Dyer asked whether Michael could get Jeff a job and Michael spoke to Jeff about possible employment.  When Dyer was found he was fully clothed, face down on his bed, with a pool of blood at his head.  An electrical cord hung around his neck.  Ligature strangulation was the cause of death.  Medical testimony at the presentence hearing indicated that Dyer probably was strangled after being rendered unconscious from blows to the head with a blunt instrument.

When first questioned, Landrigan denied knowing Dyer or having been to his apartment.  However, Landrigan was wearing one of Dyer's shirts when he was arrested.  Fingerprints from the scene matched Landrigan's, and a shoeprint taken from Dyer's apartment matched one of Landrigan's sneakers.  The sneaker had a small amount of blood on it that matched blood on the shirt Dyer wore.

---

[1](...continued)
panel.  28 U.S.C. § 2244(b)(3)(B).

[2]  The facts are taken from the Arizona Supreme Court's opinion on direct appeal.  *Arizona v. Landrigan*, 859 P.2d 111, 113-14 (Ariz. 1993).

Landrigan's ex-girlfriend testified that, in a telephone conversation in December of 1989, Landrigan told her he was "getting along" in Phoenix by "robbing." And in a phone call around Christmas, Landrigan told her that he had "killed a guy . . . with his hands" about a week before.[3]

Landrigan was convicted on June 28, 1990 of theft, second degree burglary, and felony murder for having caused the victim's death in the course of and in furtherance of the burglary. The jury also found that Landrigan had been convicted in Oklahoma of assault and battery with a deadly weapon, second degree murder, and possession of marijuana. At the time of the Dyer murder, he was an escapee from an Oklahoma prison.

The trial judge (who was also the sentencer) found two statutory aggravating circumstances under Ariz. Rev. Stat. § 13-703(F), that Landrigan was previously convicted of a felony involving the use or threat of violence on another person; and that he committed the offense in expectation of receiving something of pecuniary value. The judge found no statutory mitigating circumstances sufficient to call for leniency, but she identified family love and lack of premeditation as non-statutory

---

[3] Smith testified that Landrigan said: "I did it with my hands. Me and another dude. I just beat 'em, you know what I mean? . . . And he killed him. They ain't got him. He disappeared. . . . Well, like I said all I did was knock him out, the other guy killed him."

mitigating circumstances. On balance, the sentencing judge concluded, the mitigating factors did not outweigh the aggravating circumstances. Accordingly, Landrigan was sentenced to an aggravated term of 20 years on the burglary count, six months in county jail for theft, and death for murder.

In the course of rendering her decision, the sentencing judge found from the evidence at trial and at sentencing that Landrigan "was the actual killer, that he intended to kill the victim and was a major participant in the act. Although the evidence shows that another person may have been present, the Court finds that the blood spatters on the tennis shoes of the defendant demonstrate that he was the killer in this case."

The Arizona Supreme Court affirmed Landrigan's conviction and sentence on direct appeal. *Landrigan,* 859 P.2d at 114, 117-18. After post-conviction relief proceedings in state court, Landrigan filed a petition for writ of habeas corpus in federal district court on October 16, 1996. The petition focused on claims of ineffective assistance at sentencing. Ultimately, the United States Supreme Court reversed this court's grant of an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465 (2007), *rev'g* 441 F.3d 638 (9th Cir. 2006) (en banc).

Meanwhile, an Arizona statute was enacted in 2000 that provided for post-

conviction DNA testing.[4] In the wake of that statute, an investigator with the office of the Federal Public Defender for the District of Arizona contacted the Phoenix Police Department to determine whether hair found on or in Dyer's hand, and a fingernail found in his apartment, still existed. The Police Department couldn't find them. In the summer of 2006, Landrigan sought an order from the Maricopa County Superior Court authorizing him to conduct post-conviction DNA testing on the fingernail and hairs. Although the state indicated that this evidence was available, and an order was issued, on January 29, 2007 the Phoenix Police Department again said it couldn't find the fingernail or hairs.

On August 6, 2007, Landrigan asked the superior court to expand its 2006 DNA testing order to include Dyer's jeans, the blanket from his bed, and a set of two curtains from his apartment. The court did so. The jeans, blanket, and curtains were sent to Technical Associates Inc. (TAI), a Ventura, California laboratory, for testing. TAI reported on April 22, 2008 that Landrigan was excluded as a contributor of any of the DNA. Landrigan asked for an evidentiary

---

[4] Ariz. Rev. Stat. § 13-4240(A) provides for post-conviction testing of "any evidence that is in the possession or control of the court or the state, that is related to the investigation or prosecution that resulted in the judgment of conviction, and that may contain biological evidence." Before seeking DNA testing under this statute, the prisoner must demonstrate to the court that the evidence still exists. *Id.* § 13-4240(B)(2).

hearing which the superior court denied (August 7, 2009) on the footing that there was no dispute about the findings for an evidentiary hearing to resolve.

On August 10, 2009 Landrigan sought to amend his post-conviction review petition to assert that the results of the DNA testing showed that the sentencing judge erroneously concluded he was eligible for the death penalty under *Enmund v. Florida*, 458 U.S. 782, 797 (1982). The superior court dismissed this petition (October 5, 2009), finding that the DNA evidence would not have affected the trial court's sentence of death. It found that at most, the new DNA evidence shows only that someone else may have been involved in the crimes. The court also noted that Landrigan told his psychological expert that he put the victim in a headlock while his accomplice hit him. Further, both the trial judge and the Arizona Supreme Court determined that the record did not present mitigating evidence sufficiently substantial to call for leniency. Finally, the court observed that if an accomplice were involved in the murder, Landrigan knew it and could have presented this fact, or his lesser culpability, as mitigation. The superior court denied rehearing. The Arizona Supreme Court declined review, and the United States Supreme Court declined to issue a writ of certiorari. *Landrigan v. Arizona*, No. 10-5280, 2010 WL 2717732 (U.S. Oct. 4, 2010).

While TAI performed tests on blood stains on the jeans, it did not subject

-6-

them to DNA analysis. At Landigran's request, the superior court on October 10, 2010 released the jeans for TAI to complete the testing ordered in 2007. Preliminary results furnished on October 20, 2010 show that the semen and blood left on both the jeans and the blanket are the victim's or someone else's, not Landrigan's.

After some procedural back and forth, the Arizona Supreme Court refused to stay the execution on account of the new DNA test results. In the midst of that court's consideration of the issue, Landrigan filed the application for leave to file an SOS petition that we now consider. In the application, Landrigan asserts that the DNA evidence supports a claim for habeas relief in that it clearly shows he is not eligible for the death penalty under *Enmund* and *Tison v. Arizona*, 481 U.S. 137, 158 (1987). The petition he wishes to file in district court seeks a writ of habeas corpus as to the death sentence and an order that the Arizona courts conduct whatever proceedings are necessary to comply with *Enmund* and *Tison*.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may only authorize the filing of an SOS application if the applicant makes a prima facie showing that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder

-7-

would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii).[5] In addition, the applicant must show that the factual predicate for the claim could not have been discovered previously through the exercise of due diligence. *Id*. § 2244(b)(2)(B)(i).

On diligence, we note that Landrigan was convicted in June 1990. The Arizona DNA-testing statute was adopted in 2000, but Landigran did not seek DNA testing until 2006. Even then, testing was sought only as to the hair and a fingernail. It was not until 2007, when the Police Department finally said it didn't have this evidence, that Landrigan asked for DNA testing on Dyer's jeans, blanket, and curtains. Landrigan offers no explanation for waiting six years after the Arizona DNA statute was enacted to seek DNA testing of any sort. Nor does any explanation appear for why he did not ask for DNA testing on the jeans, blanket*,* or curtains in 2006 when he asked for it on the hair and fingernail. In these circumstances a serious question exists whether the factual predicate for the claim – results of DNA testing on the jeans – could not have been discovered earlier.

---

[5] The state suggests that only a conviction may be challenged under § 2244(b), as the statute pertains to the "underlying offense." However, we have treated a claim that a petitioner is ineligible for the death penalty as covered. *See Thompson v. Calderon*, 151 F.3d 918, 923-24 (9th Cir. 1998) (en banc). Regardless, the outcome in this case is the same, given our conclusion that no adequate showing of a constitutional violation has been made.

But assuming diligence, Landrigan must make a prima facie showing[6] of ineligibility for the death penalty under *Enmund* and *Tison*. He submits that he has done so by showing that he was not the actual killer or a major participant because he is excluded as a source of the DNA found on the victim's curtains, blanket, and jeans.

In *Enmund*, a couple was robbed and fatally shot by Sampson and Jeanette Armstrong. Enmund was in the get-away car, not at the house where the murders occurred. He, along with the Armstrongs, was convicted of first-degree murder and robbery. The Court held that the death penalty may not constitutionally be imposed on one who aids and abets a felony (such as robbery) in the course of which a murder is committed by someone else when he did "not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797. *Tison* involved two individuals whose participation was neither as killer, nor as someone who wasn't on the scene and didn't intend or

---

[6] A "prima facie showing" is "'a sufficient showing of possible merit to warrant a fuller exploration by the district court,'" and we will grant an application for an SOS petition if "'it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition.'" *Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997) (*per curiam*) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)); *Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc) (quoting *Woratzeck*, 118 F.3d at 650)).

plan to kill as in *Enmund*. Rather, they armed the actual killers knowing they had previously killed others, they were present and stood by and watched their companions shoot and kill the victims, and could have foreseen that lethal force might be used. Thus, they were not minor participants and their mental state was one of reckless indifference to the value of human life. In these circumstances, the Court concluded, the *Enmund* culpability requirement could be met.

We disagree that the DNA test results make a prima facie showing of a constitutional violation under *Enmund* and *Tison*. Together *Enmund* and *Tison* indicate that major participation in the felony, together with reckless indifference to human life, suffices for death penalty eligibility. Here, the sentencing judge found that Landrigan was the actual killer, that he intended to kill Dyer, and that he was a major participant in the act – in other words, the *Enmund/Tison* culpability requirements were met. Landrigan maintains that the sentencing judge's finding clearly lacks support in the evidence in light of the DNA test results, but these results simply show that Landrigan did not contribute semen or blood found on Dyer's jeans. They do not show that Landrigan was not, at a minimum, a major participant in Dyer's death. Landrigan further suggests that the results demonstrate the sentencing judge's "folly in believing the testimony of Cheryl Smith," but whether part, all, or none of her testimony was credible, Landrigan confessed to his

-10-

psychologist that he "put the victim in a head lock, and his partner hit him until he was unconscious. The client [Landrigan] went back to robbing the place, his original intention, while the partner took an electric cord and began to choke him to death." Thus, Landrigan was present at the scene (unlike Enmund), and he has admitted facts that demonstrate his major participation in, and reckless indifference to, Dyer's murder.

We conclude that Landrigan's second and successive habeas application presents no substantial ground on which relief might be granted. Our review of the record convinces us that further exploration by the district court is unwarranted. Accordingly, we deny his application. This moots the request for a stay.[7]

APPLICATION DENIED. REQUEST FOR STAY DISMISSED.

---

[7] Our denial "shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E).