**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERIC JOHN KING,

         Petitioner,

  v.

ERNEST TRUJILLO, Warden of Arizona
State Prison Complex-Eyman,

 and

CHARLES L. RYAN, Director of the
Arizona Department of Corrections,

        Respondents.

No. 11-70847

ORDER

Filed March 28, 2011

Before: KOZINSKI, Chief Judge, KLEINFELD, and TALLMAN, Circuit Judges.

    PER CURIAM:

    Pursuant to 28 U.S.C. § 2244(b)(3) of the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), Eric John King, an Arizona prisoner on death row,

requests permission to file a second or successive application for a writ of habeas

corpus in the District of Arizona. Additionally, he asks that we stay his execution,

currently scheduled for March 29, 2011. We deny both requests.

**FACTS & PROCEDURAL HISTORY**

King was convicted in Arizona state court on September 5, 1990, for the December 27, 1989, armed robbery and murders of Ron Barman, a convenience-store clerk, and Richard Butts, the store's security guard.[1] He was sentenced to death on March 4, 1991. Since then, he has filed numerous state and federal appeals in an attempt to have both his conviction and sentence set aside. None have been successful. On February 8, 2011, the Arizona Supreme Court granted the State's motion for a warrant of execution. The warrant authorizes the State to execute King at 10 a.m. on March 29, 2011, and is valid for twenty-four hours.

The Maricopa County Superior Court dismissed King's fourth petition for post-conviction relief on February 8, 2011.[2] In this petition, King argued that the recording[3] of the crimes by the store's time-lapse cameras, which the State prosecutors used to create some of the exhibits ultimately introduced at trial—namely, still photos and an edited compilation of the recorded images—was

---

[1] Because the facts of King's crimes were described in our previous denial of habeas relief, King v. Schriro, 537 F.3d 1062, 1064–67 (9th Cir. 2008), cert. denied, 129 S. Ct. 1582 (2009), we will not discuss them here.

[2] State v. King, No. CR 1990-000050, slip op. at 4 (Super. Ct. Ariz. Feb. 8, 2011).

[3] The term "recording" refers to the physical tape upon which the images captured by two of the store's time-lapse surveillance cameras were recorded.

not the original recording, but a copy. King thus claimed that he was convicted on false testimony—not because the "copy" did not fairly and accurately depict the events that occurred, but because one of the prosecution's witnesses might have inaccurately testified that the tape identified as Exhibit 1, but never admitted into evidence, was the original. He argued that this is newly discovered evidence and that, absent the witness's false testimony, he could not have been convicted. The Superior Court concluded that King's claim was procedurally barred and, alternatively, failed on the merits. On March 15, 2011, the Arizona Supreme Court summarily denied his petition for review.[4]

On March 23, 2011, the Superior Court likewise denied King's fifth petition for post-conviction relief as procedurally barred.[5] In that petition, King again argued that he had been convicted on false testimony—specifically, the testimony of Michael Jones, who had been with King on the night of the murders, and who was a witness for the prosecution at King's trial. King attached a March 7, 2011, "recantation" affidavit from Jones, who stated that he was so intoxicated on the night of the murders that he had no memory of the events of that day and

---

[4] State v. King, No. CR 11-0044-PC (Ariz. Mar. 15, 2011) (order denying post-conviction relief and stay of execution).

[5] State v. King, No. CR 1990-000050, slip op. at 4 (Super. Ct. Ariz. Mar. 23, 2011).

3

remembered only waking up in jail the following morning.[6]  Like the arguments in

his fourth state petition for post-conviction relief, King claims that Jones's lack of

memory is newly discovered evidence showing actual innocence.  The Arizona

Supreme Court denied King's petition for review on March 28, 2011.[7]

King now seeks to relitigate these same issues in federal court.  Because we

have previously considered and denied habeas claims brought by King, he asks us

to grant him leave to file a second or successive petition in the district court.[8]

**ANALYSIS**

We begin, as always, with the statutory text.  To be entitled to an order

authorizing the district court to consider his second or successive petition, King

must "make[] a prima facie showing that [his] application satisfies the

requirements of this subsection."[9]  In that regard, § 2244(b) provides:

---

[6] The parties dispute the extent of Jones's "recantation" given the language used in his new affidavit.  Specifically, Jones claims that he has no memory now and had no memory when he woke up in jail on the morning of December 27, 1989.  Because this distinction does not affect our conclusion, we do not resolve whether Jones's statement applies to his memory during his interviews with the police or his testimony at trial.

[7] State v. King, No. CR 11-0074-PC (Ariz. Mar. 28, 2011) (order denying petition for review and motion to stay execution).

[8] 28 U.S.C. § 2244(a), (b)(3).

[9] § 2244(b)(3).

4

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

However, § 2244(b)(2) is not the exclusive standard. In extremely limited situations, the standard for establishing "actual innocence," which that section has been interpreted to require, may differ.[10] Recently, we have recognized that a Brady v. Maryland[11] violation claim in a habeas petition *may* not be subject to the "clear and convincing standard," provided the newly discovered evidence

---

[10] United States v. Lopez, 577 F.3d 1053, 1066–68 (9th Cir. 2009) (leaving open whether "meritorious Brady claims that would have been reviewable under the pre-AEDPA prejudice standard" are subject to § 2244(b)(2)(B)(ii)), cert denied, 130 S. Ct. 1718 (2010); Cooper v. Woodford, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc). Contra Tompkins v. Sec'y, Dep't of Corr., 557 F.3d 1257, 1259–60 (11th Cir. 2009) (per curiam) (holding that all second-in-time claims under Brady v. Maryland, 373 U.S. 83 (1963), are subject to AEDPA's gatekeeping provisions); Evans v. Smith, 220 F.3d 306, 323 (4th Cir. 2000) (same).

[11] 373 U.S. 83 (1963).

supporting the claim was "material" under Brady.[12]  Because we find that King's claims do not fit within this narrow exception, we adhere to our precedent and evaluate his showing of actual innocence for clear and convincing evidence.

In sum, King must make a prima facie showing to us that his claim (1) is based on newly discovered evidence and (2) establishes that he is actually innocent of the crimes alleged.[13]  This is no easy task.  Rather, "[f]ew applications to file second or successive petitions . . . survive these substantive and procedural barriers."[14]  After reviewing the entire record, we conclude that King has not met his heavy burden.[15]  He is therefore not entitled to the relief he seeks.

## I.      Jones's Affidavit

---

[12] Lopez, 577 F.3d at 1064, 1066–68 ("[P]rosecutorial error, however, does not rise to the level of a constitutional violation unless petitioner demonstrates a threshold level of prejudice:  the undisclosed evidence must be material.  Regardless of whether a Brady claim is raised in a first petition or a second-in-time petition, petitioner can prevail and obtain a new trial only if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (citation omitted)).

[13] See Villafuerte v. Stewart, 142 F.3d 1124, 1126 (9th Cir. 1998) (interpreting 28 U.S.C. § 2244(b)(2) to require showing of actual innocence).

[14] 17B Charles Alan Wright et al., Federal Practice and Procedure § 4267, at 434–35 (3d ed. 2007).

[15] See Morales v. Ornoski, 439 F.3d 529, 531 (9th Cir. 2006) (per curiam).

King asserts that Jones's affidavit establishes that Jones gave false testimony at trial when he said that, after hearing shots fired, he saw King leaving the convenience store with a gun in his hand. King claims that the prosecutor knowingly presented this false testimony by "pushing" Jones to implicate King on the stand.[16] To the extent that King argues that the prosecutor violated his constitutional rights under Napue v. Illinois, 360 U.S. 264 (1959), or Brady v. Maryland, 373 U.S. 83 (1963), this assertion is entirely without merit.

Before proceeding to address whether a prima facie showing of due diligence and actual innocence has been made, we must question whether King has even raised a non-frivolous claim. Though King attempts to couch Jones's affidavit as newly discovered evidence, it is no such thing. The record clearly demonstrates that Jones's claimed intoxication and lack of memory was apparent to the prosecution, the defense, and the jury at the trial. Jones "repeatedly stated during his trial testimony that due to intoxication he had virtually no memory of the night in question."[17]

---

[16] See State v. King, 883 P.2d 1024, 1031 n.3 (Ariz. 1994).

[17] State v. King, No. CR 1990-000050, slip op. at 3 (Super. Ct. of Ariz. Mar. 23, 2011) (denying King's fifth petition for post-conviction relief).

Also, the record demonstrates that even *prior to trial*, the defense was aware of Jones's claimed lack of memory:

> As [defense] counsel had expected, Jones claimed memory problems. When he was asked which direction he was going when the policeman stopped him half a block from the convenience store, he said, "I don't actually remember," and when asked whether he was coming back from the convenience store, he said, "I really don't know. I was very intoxicated at the time."[18]

In fact, based on the defense's anticipation of Jones's professed lack of memory, defense counsel moved to preclude the introduction by the prosecution of prior statements implicating King that Jones had made to Detective Armando Saldate of the Phoenix Police Department. Because the trial judge found that Jones's memory loss was feigned, however, the prosecutor impeached Jones with his prior inconsistent statements and "got Jones to admit . . . what he had previously told the police officer."[19]

That same factual finding by the trial judge provides yet another independent basis for denying King's claim outright: it directly refutes the very basis of King's claim. The state courts have already made a factual determination that Jones was lying when he said he had no memory, not when he was "remembering" the events

---

[18] King, 537 F.3d at 1067.

[19] Id. at 1069.

that occurred.[20]  This finding is entitled to a presumption of correctness under

AEDPA,[21] and King does not present clear and convincing evidence to overcome

this presumption.  Instead, he simply presents an affidavit that repeats exactly the

same testimonial statements that the trial judge expressly declined to credit.  Given

that we must adhere to the trial judge's factual findings, we find no basis in Jones's

"new" testimony on which King can stake a constitutional claim.

Of course, even were we to strain to find that King's habeas application

raises even a cognizable claim on the issue of Jones's affidavit, we would still be

required to deny King's application under § 2244(b)(2)(B).  King fails to make a

prima facie showing that he could not previously have discovered Jones's lack of

memory of the night of the murders because the "new" statements presented in

Jones's affidavit are essentially no different from those made at trial over twenty

years ago.  Thus, Jones's "recantation" is not a new factual predicate at all.  Rather,

it is the same claim that has been litigated and argued over for more than two

decades.[22]  We therefore cannot fit Jones's affidavit of March 7, 2011, into

---

[20] State v. King, No. CR 1990-000050, slip op. at 3 (Super. Ct. of Ariz. Mar. 23, 2011).

[21] 28 U.S.C. § 2254(e)(1).

[22] See, e.g., King v. Schriro, No. CV-98-1277-PHX-RCB, 2006 WL 1735247, at *12 (D. Ariz. June 22, 2006) ("The trial court delayed its final ruling

(continued...)

9

§ 2244(b)'s requirement that "the factual predicate for [King's] claim could not have been discovered previously through the exercise of due diligence."[23]

Likewise, we would also deny King's application for failing to make a sufficient showing of actual innocence. Certainly, given the preceding discussion, it is clear that the claimed nondisclosure in no way amounts to a material Brady violation. Therefore, we must assess whether the Jones affidavit "would be sufficient to establish by clear and convincing evidence that . . . no reasonable factfinder would have found [King] guilty of the underlying offense."[24]

In that regard, even if Jones had been permitted to testify as to his lack of memory without being impeached by his prior inconsistent statements and without being pushed into "remembering" his prior statements, substantial evidence from

---

[22](...continued)
until it heard the testimony of Jones and [Detective] Saldate, at which point it concluded that Jones was feigning memory loss . . . ."); King, 883 P.2d at 1031 n.3 ("The evidence in the record that supports the trial court's conclusion includes: (1) Jones testified that he did not want to be testifying; (2) while testifying, Jones would claim not to remember certain events, but when pushed, he would often 'remember' what happened; and (3) Jones would often attribute his memory loss to his drinking the night of the murders, but Detective Saldate and the police officer who stopped Jones on the night of the murders both testified that Jones did not appear intoxicated."); cf. Morales, 439 F.3d at 533 ("Morales has known about the alleged infirmities in Samuelson's testimony since as early as 1993.").

[23] § 2244(b)(2)(B)(i).

[24] § 2244(b)(2)(B)(ii).

other sources, including eyewitnesses and security camera images, implicated King as the murderer.  As we described more fully in our prior denial of King's first habeas petition, security camera pictures from the store showed a man in a distinctively patterned sweater shooting the store clerk.[25]  Several witnesses described seeing a man near the store immediately before and after the shootings who fit King's description and who was wearing the same distinctive sweater, including some who saw the man wipe off the belt and empty holster of the mortally wounded security guard.[26]  After the murders, another close acquaintance of King saw him throw a bag containing a gun and that same distinctively patterned sweater into a dumpster.[27]  Given this body of incriminating evidence, we are convinced that even if we agreed that Jones's testimony was false, King cannot make a prima facie showing that he is actually innocent of the crimes for which he was convicted.

Because Jones's lack of memory neither shows that King is actually innocent nor negates the impact of the substantial other evidence against him, we must deny King's application.

---

[25] King, 537 F.3d at 1067.

[26] Id.

[27] Id.

## II. The "Copied" Recording

Again, we first consider whether "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence."[28] To that end, we recognize that the Maricopa County Superior Court made a specific factual finding that the recording at issue "existed at trial and [King] had an opportunity to examine it at that time."[29] Absent clear and convincing evidence to the contrary, that finding is presumed correct.[30] King must therefore not only account for the more than twenty-year lapse in its discovery, he must also rebut the state court's finding. He falls short.

In his petition, King states that he "exercised diligence after the Federal Public Defender was appointed to represent him in March 2009" and goes on to detail his efforts *following that date*. He offers no explanation, however, for the two decades preceding that appointment, other than to state that he was entitled to rely on the prosecutor's representations regarding the authenticity of the recording.

_____

[28] § 2244(b)(2)(B)(i).

[29] State v. King, No. CR 1990-000050, slip op. at 2 (Super. Ct. of Ariz. Mar. 23, 2011).

[30] § 2254(e)(1).

This is not due diligence. King "would have learned of the new evidence had he exercised reasonable care."[31] His failure to exercise that care precludes relief.

Furthermore, even were we to credit King's diligence argument, he fails to establish a colorable claim of actual innocence.[32] His speculative assertion that his counsel "might also have interposed a new objection" to the introduction of exhibits derived from the recording (identified and marked as Exhibit 1 but never admitted into evidence) had he known that the recording was not the original is both unfounded and, more importantly, irrelevant as to King's actual innocence.

First, there was sworn testimony from the convenience store's security director that the images shown to the jury were fair and accurate representations of the images he saw on the surveillance camera recording when he reviewed it on the morning of the murders, in the presence of the police at the crime scene.[33] Thus, as

---

[31] See Souliotes v. Evans, 622 F.3d 1173, 1178 (9th Cir. 2010).

[32] § 2244(b)(2)(B)(ii) ("[T]he facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."); see Villafuerte, 142 F.3d at 1126.

[33] This testimony was adequate to lay the evidentiary foundation under Arizona's Rules of Evidence to introduce the time lapse recording and its images into evidence. See Ariz. R. Evid. 901(a). The Arizona courts have so ruled and we may not revisit this state law question on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

the Arizona courts found, the exhibits seen by the jury would have been admissible whether or not Exhibit 1 was an original or a copy.

Second, the Supreme Court has made clear that "'actual innocence' means factual innocence, not mere legal insufficiency."[34] In that regard, we note that King has not even alleged that the images admitted into evidence and presented to the jury were fabricated or otherwise inaccurate. As a result, even if King's claims regarding the recording being a copy were true, there is no basis for identifying any prejudice against him now. Copied images can be just as damning in front of a jury as originals, and duplicate copies of images or recordings can be introduced at trials without violating due process.[35]

Moreover, as has been discussed, there were multiple eyewitnesses who specifically described a man matching King's distinctive description—both his physical appearance and his unique sweater—exiting the convenience store and wiping off the slain security guard's empty holster.[36] All of this evidence, taken

---

[34] Bousley v. United States, 523 U.S. 614, 623 (1998).

[35] See, e.g., Fed. R. Evid. 1003; Ariz. R. Evid. 1003.

[36] See King, 537 F.3d at 1064 ("[D]espite the late hour, numerous individuals saw parts of the events, and several described [King's] sweater pattern."); see also id. at 1064–67 (describing eyewitnesses' testimonials).

"as a whole,"[37] points to no one else but King as the murderer. There is consequently no credible argument before us that convinces us that the "copied" images introduced at trial prove, or even relate to, King's "actual innocence."[38]

* * *

Since King has not been able to demonstrate either due diligence or actual innocence as to any of his claims, we deny him permission to file a second or successive application for a writ of habeas corpus.[39] This denial is "not . . . appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari."[40]

## III.   King's Request for a Stay

Because we hold that King's second or successive application for a writ of habeas corpus "presents no substantial ground on which relief might be granted,"[41] there is no need for the district court to engage in any further investigation or factfinding. Accordingly, King's request for a stay is denied as moot.

**APPLICATION DENIED.  REQUEST FOR STAY DENIED.**

---

[37] § 2244(b)(2)(B)(ii).

[38] See Villafuerte, 142 F.3d at 1126.

[39] See Morales, 439 F.3d at 531.

[40] § 2244(b)(3)(E); see Felker v. Turpin, 518 U.S. 651, 657 (1996).

[41] Landrigan v. Trujillo, 623 F.3d 1253, 1258 (9th Cir. 2010).

## COUNSEL LISTING

Jon M. Sands, Federal Public Defender for the District of Arizona; Michael L. Burke and Ashley McDonald, Assistant Federal Public Defenders; for Petitioner Eric John King.

Thomas C. Horne, Attorney General of the State of Arizona; Kent E. Cattani, Chief Counsel; John Pressley Todd, Assistant Attorney General; for Respondents Ernest Trujillo and Charles L. Ryan.