FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MURRAY HOOPER, <br><br> Petitioner-Appellant, <br><br> v. <br><br> DAVID SHINN, Director, Arizona Department of Corrections, Rehabilitation and Reentry; STACI IBARRA, Warden, Eyman Prison; RODNEY CARR, Warden, Florence Prison, <br><br> Respondents. | No.  22-99012 <br><br> D.C. No. 2:22-cv-01935-SMM <br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Submitted November 15, 2022[*]
San Francisco, California

Before: Jacqueline H. Nguyen, Mark J. Bennett, and Ryan D. Nelson, Circuit Judges.

Per Curiam Opinion

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

1

PER CURIAM:

Murray Hooper is scheduled to be executed in Arizona on Wednesday, November 16, 2022. On November 15, 2022, Hooper filed a second-in-time habeas petition in the district court under 28 U.S.C. § 2254, alleging a freestanding innocence claim, violations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959), and a due process violation based on the surviving victim's unreliable pretrial identification. The district court dismissed the *Brady* and *Napue* claims, finding that they were unauthorized second or successive claims. *See* 28 U.S.C. § 2244(b)(3)(A). It also dismissed the due process claim, finding that it had been presented in Hooper's first federal petition. The district court determined that the actual innocence claim was not cognizable in habeas, and alternatively, even if it were, Hooper failed to meet the demanding standard for freestanding actual innocence claims.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We affirm the dismissal of the due process and actual innocence claims. We agree with the district court that the *Brady* and *Napue* claims are second or successive claims subject to § 2244(b)(2). We construe Hooper's notice of appeal as an application for authorization to file a second or successive petition as to those claims. So construed, we deny Hooper's request to file a second or successive petition

2

because he has failed to satisfy the stringent standards under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2244(b)(2).

# I

Hooper was hired to murder Pat Redmond. On New Year's Eve 1980, Redmond, Marilyn Redmond (Redmond's wife), and Helen Phelps (Marilyn's mother) were home preparing for a festive dinner when Hooper and his coconspirators forced their way into the home at gunpoint. They demanded jewelry, money, and guns. They herded Redmond, Marilyn, and Helen into the main bedroom, forced them to lie face down on the bed, and bound and gagged them. One or all the intruders shot each victim in the head, and one slashed Redmond's throat with a knife. Redmond and Helen died, but Marilyn miraculously survived.[1]

In 1982, Hooper was convicted on eleven felony counts, including two counts of first-degree murder. *See Hooper v. Shinn*, 985 F.3d 594, 602 (9th Cir. 2021). The court sentenced Hooper to death for the two first-degree murders. *Id.* at 610. Hooper filed his first federal habeas petition in 1998. *Id.* at 613. The

---

[1] We provide a brief summary of Hooper's crimes, as we described them in detail in our prior decision denying Hooper's habeas petition. *See Hooper v. Shinn*, 985 F.3d 594, 599–601 (9th Cir. 2021). We note that we previously denied Hooper's application for leave to file a second or successive petition that would have alleged violations under *Brady*. *Hooper v. Shinn*, 859 F. App'x 79 (2021).

district court denied the petition, and we affirmed. *Id.* at 600. The Supreme Court denied certiorari. *Hooper v. Shinn*, 142 S. Ct. 1376 (2022).

After the Arizona Supreme Court issued a warrant of execution, setting an execution date of November 16, 2022, Hooper filed his sixth and seventh petitions for post-conviction relief ("PCR") in the Arizona Superior Court.[2] His sixth PCR petition stated a claim for actual innocence based on a report by Dr. Geoffrey Loftus, an expert in human perception and memory. According to Hooper, because Dr. Loftus's opinions would have undermined Marilyn's key eyewitness testimony, no reasonable factfinder would have found him guilty of the murders.

Hooper's seventh PCR petition asserted violations under *Brady* and *Napue*, and a due process violation based on Marilyn's unreliable pretrial identification. All the claims in his seventh PCR petition rested on a single piece of allegedly "new" evidence: Marilyn, contrary to her trial testimony and the testimony of officers, had been shown a photo lineup of Hooper and was unable to identify him before she identified Hooper in a live lineup. According to Hooper, this "new" evidence exists based on a single statement made by the Maricopa County Attorney's Office in its October 28, 2022, letter to the Arizona Board of Executive Clemency ("State's Letter"): "On February 21, 1981, Hooper and Bracey were

---

[2] "From 1986 through 2017, Hooper filed five state post-conviction petitions." *Hooper*, 985 F.3d at 612.

arrested in Chicago. Marilyn was flown out and participated in live line ups with them. *She had previously been unable to pick them out of a paper lineup*." (emphasis added).[3]

During the clemency hearing on November 3, 2022, Hooper argued that the State's reference to a "paper lineup" showed that there was a never-before-disclosed photo lineup in which Marilyn had failed to identify Hooper. The prosecutor explained that there was no evidence that Marilyn had seen a photo lineup of Hooper and that to the extent the State's Letter suggested otherwise, it was an inadvertent misstatement. The prosecutor explained that Marilyn had been shown sketches of a white man and a black man who was later identified as William Bracy (Hooper's co-defendant), but Marilyn could not identify the subjects of those drawings. Marilyn had also failed to identify Ed McCall (the third murderer) in two photo lineups. The prosecutor explained that those were the "paper lineup[s]" referenced in the State's Letter and that the State had no evidence that Marilyn had ever seen a photo of Hooper before identifying him in the live lineup. In its response to Hooper's seventh PCR petition, the State maintained its position expressed at the clemency hearing.[4]

---

[3] The State submitted a revised letter to the Board on November 1, 2022, but this quoted language remained unchanged.

[4] On November 3, 2022, the Arizona Board of Executive Clemency unanimously voted to deny relief.

5

The Superior Court consolidated the sixth and seventh PCR petitions and held an evidentiary hearing on November 10, 2022. As relevant here, Jeffrey Sparks, attorney for the State, avowed at the evidentiary hearing "that victim Marilyn Redmond was not shown a printed lineup prior to her live identification of [Hooper], that no evidence of any such lineup exists, and that counsel Sparks had personally verified the explanation given by the prosecutor to the Arizona Board of Executive Clemency." Dr. Loftus testified at the evidentiary hearing. As found by the Superior Court, Dr. Loftus testified that "much of the research forming the foundation of [Hooper's] current [innocence] claim was conducted decades ago," and "much of the research cited in his report was developed in the 1990s and 2000s." The Superior Court also found that Dr. Loftus's report was "cumulative to that which [Hooper] presented at trial and would not have substantially undermined Marilyn Redmond's testimony to such an extent that the judgment would have changed."[5]

---

[5] While we are likely required to give deference to the Superior Court's findings regarding Dr. Loftus, *see* 28 U.S.C. § 2254(e)(1), Hooper's actual innocence claim based on Dr. Loftus's report fails even without any deference, as discussed below.

On November 14, 2022, the Superior Court issued its ruling dismissing all of Hooper's claims.[6] In doing so, it expressly credited the State's explanation that the statement at issue in the State's Letter was a misstatement:

> This Court accepts the State's explanation of the misstatement, the State's avowal that [Hooper] is in possession of the same materials used by the State to prepare its letter opposing clemency, and the State's avowal that there is no evidence that Marilyn Redmond was shown a printed lineup including [Hooper] before she identified him in person.

Hooper filed a petition for review in the Arizona Supreme Court. On November 14, 2022, the Arizona Supreme Court granted review but denied relief. The Arizona Supreme Court found "that [Hooper's] claim the State has failed to disclose a paper lineup, including allegations of misconduct and unethical conduct has no evidentiary support and no basis in fact." In reaching that finding, the Arizona Supreme Court relied in part on the prosecutor's retraction and explanation at the clemency hearing.

Hooper then filed the instant second-in-time habeas petition in federal district court, reasserting the claims alleged in his sixth and seventh state PCR petitions. After finding that the *Brady* and *Napue* claims were second or

---

[6] The Superior Court also denied Hooper's motion for reconsideration of the court's denial of his request for discovery. Hooper had asked that "he be allowed complete access to the State's file and that he be able to interview the two prosecutors responsible for drafting a letter in opposition to his request for clemency." The Superior Court denied the motion for reconsideration based on its acceptance of attorney Sparks's avowal at the evidentiary hearing.

successive and the due process claim had been presented in his first petition, the district court dismissed those claims. *See Brown v. Muniz*, 889 F.3d 661, 667 (9th Cir. 2018) ("If the petition is second or successive, then the district court lacks jurisdiction and must dismiss the petition unless and until the court of appeals grants an application to file it." (citing 28 U.S.C. § 2244(b)(3)(A))). The district court also dismissed the actual innocence claim, finding that it was not cognizable in habeas, and alternatively, even if it were, that Hooper failed to meet the demanding actual innocence standard. The district court issued a certificate of appealability (COA) on the *Brady*, *Napue*, and due process claims. Hooper immediately appealed.

We treat Hooper's notice of appeal as a request for a certificate of appealability (COA) on the actual innocence claim, *see Jones v. Ryan*, 733 F.3d 825, 832 n.3 (9th Cir. 2013) (construing an appeal as an application for a COA), and we grant Hooper a COA on the actual innocence claim.[7] Because we hold that

---

[7] "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Under the circumstances, we believe that, as to the actual innocence claim, "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id.*

Hooper's *Brady* and *Napue* claims are second or successive, we also treat his appeal as a request for authorization to file a second or successive habeas petition. *See id.* at 840–41 (construing an appeal as a request for authorization to file a second or successive petition).

## II

### A

"We review a district court's dismissal of a habeas petition as second or successive de novo." *Brown*, 889 F.3d at 666. "Our review of an application to file a second or successive habeas petition is governed by the standard set forth in AEDPA, as is our determination of whether a second-in-time habeas petition is second or successive under AEDPA." *Id.* at 666–67.

### B

We first address Hooper's due process claim based on Marilyn's supposed unreliable pretrial identification. We agree with the district court that this claim is barred because Hooper presented it in his first federal habeas petition.

"A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). "[A] claim 'is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments . . . [or] proved by different factual

allegations.'" *Gulbrandson v. Ryan*, 738 F.3d 976, 997 (9th Cir. 2013) (ellipsis and second alteration in original) (quoting *Babbitt v. Woodford,* 177 F.3d 744, 746 (9th Cir. 1999)).

Hooper's first petition asserted that he "was denied due process of law in violation of the Fourteenth Amendment because the pretrial identification by Marilyn Redmond was unduly suggestive." His present claim has the same "basic thrust or gravamen": "Marilyn Redmond's pretrial identification was unduly suggestive, inadmissible, and tainted her in court identification of Mr. Hooper such that it should have been precluded." That his present claim is based on new evidence is irrelevant. *See Babbitt*, 177 F.3d at 746 ("[W]e will not consider new factual grounds in support of the same legal claim that was previously presented.").

Because Hooper's due process claim was presented in his first petition, we affirm the district court's dismissal of the claim. *See* 28 U.S.C. § 2244(b)(1).

## C

We also agree with the district court that Hooper's *Brady* and *Napue* claims are second or successive for purposes of federal court review. In this circuit, "[i]t is now understood that a federal habeas petition is second or successive if the facts underlying the claim occurred by the time of the initial petition, and if the petition challenges the same state court judgment as the initial petition." *Brown*, 889 F.3d

at 667 (citations omitted).[8] "[A] factual predicate accrues at the time the constitutional claim ripens—i.e., when the constitutional violation occurs." *Id.* at 672.

Hooper's *Brady* and *Napue* claims are based on the alleged "new" factual predicate that Marilyn was shown a photo lineup of Hooper. But the only evidence supporting that alleged fact is the statement in the State's Letter, which the Superior Court found was a misstatement and which the Arizona Supreme Court found had "no evidentiary support and no basis in fact." We must accept those findings, unless Hooper can show that they are wrong by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *cf. King v. Trujillo*, 638 F.3d 726, 730–31 (9th Cir. 2011) (per curiam) (applying § 2254(e)(1), which requires us to presume that a state court's factual finding is correct unless the applicant can rebut it by clear and convincing evidence, in determining whether to permit the applicant to file a second or successive petition). Hooper has failed to do so.[9] Because the

---

[8] Below Hooper did not cite or discuss *Brown* in arguing that his petition was not second or successive. As a three-judge panel we are bound by *Brown*. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). As discussed below, *Brown* compels the conclusion that Hooper's *Brady* and *Napue* claims are second or successive.

[9] Hooper tries to rebut the state courts' findings by arguing that it was improper for the courts to rely on Sparks's avowal at the evidentiary hearing. But the Arizona Supreme Court did not solely rely on Sparks's avowal. It also relied

factual predicate supporting Hooper's *Brady* and *Napue* claims does not exist, his claims fail.

But even were we to assume that the factual predicate exists, it existed before Hooper's trial, well before the time Hooper filed his first federal habeas petition in 1998.[10]  And the alleged constitutional violations based on that factual predicate occurred before 1998.  The alleged *Brady* violation—the State's suppression of a photo lineup of Hooper—occurred before Hooper's trial.  The alleged *Napue* violation—the State's knowing use of false testimony—occurred during trial.  Thus, Hooper's *Brady* and *Napue* claims and the facts underlying them all accrued before he filed his first petition.  His *Brady* and *Napue* claims are therefore second or successive.

## D

Turning to Hooper's actual innocence claim, we agree with the district court's alternative holding: assuming it is a cognizable habeas claim,[11] Hooper

---

on the prosecutor's retraction at the clemency hearing and Hooper's failure to present any evidence that the statement was not a mistake.

[10] That Hooper became aware of the fact recently is irrelevant.  *See Brown*, 889 F.3d at 672–73 (rejecting argument that factual predicate accrues at the time the petitioner becomes aware of it).

[11] *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("[The Supreme Court has] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.").

cannot meet the demanding standard. "The standard for establishing a freestanding claim of actual innocence is extraordinarily high and the showing for a successful claim would have to be truly persuasive." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) (cleaned up) (citation omitted).

Hooper's claim appears to rest primarily on Dr. Loftus's recent report and other "evidence developed through the years." He claims that this evidence would cast doubt on the State's case, including by undermining Marilyn's identification of Hooper as one of the murderers. But "[e]vidence that merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of actual innocence." *Jones*, 763 F.3d at 1251. And, as noted in our prior opinion denying Hooper's petition, the evidence was overwhelming and extended beyond Marilyn's testimony. For example, Nina Marie Louie testified that she saw Hooper in Phoenix on New Year's Eve and, the next day, one of Hooper's coconspirators confessed to her that Hooper was one of the murderers. *Hooper*, 985 F.3d at 603–04. An officer also testified that Valinda Lee Harper called the police the day after the murders and implicated Hooper in the murders. *Id.* at 604. George Campagnoni testified that Hooper was in Phoenix on New Year's Eve, Hooper and his coconspirators possessed property that looked like property owned by Redmond, and he drove Hooper and another coconspirator to the airport around

13

midnight on New Year's Eve and they had airline tickets bearing false names. *Id.* at 604. Arnold Merrill also testified that Hooper was in Phoenix on New Year's Eve, Hooper and his coconspirators had several items that might have come from the Redmond home, and one of the coconspirators confessed to Merrill that Hooper was one of the murderers. *Id.* at 605.

The evidence Hooper points to does not affirmatively prove his innocence. Given the overwhelming evidence implicating Hooper as the murderer, he fails to show actual innocence.

## III

As discussed above, Hooper's *Brady* and *Napue* claims are second or successive. Thus, we next discuss whether they meet the requirements under § 2244(b)(2)(B).

## A

Because Hooper does not argue that his claims rely on a new rule of constitutional law, we may grant Hooper's application only if he makes a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that his petition would satisfy the requirements in § 2244(b)(2)(B):

> (i) the factual predicate for the claim[s] could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim[s], if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable

14

factfinder would have found the applicant guilty of the underlying offense.

"In other words, [Hooper] must make a prima facie showing his claim (1) is based on newly discovered evidence and (2) establishes that he is actually innocent of the crimes alleged." *Bible v. Schriro*, 651 F.3d 1060, 1064 (9th Cir. 2011) (per curiam); *see also King*, 638 F.3d at 729 (explaining that § 2244(b)(2) has been interpreted to require an actual innocence standard). A "prima facie showing" is "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997) (per curiam) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).

**B**

As discussed above, Hooper's *Brady* and *Napue* claims all hinge on the alleged "new" factual predicate that Marilyn was shown a photo lineup of Hooper. But the only evidence supporting that alleged fact is the lone statement in the State's Letter, which was a misstatement, unsupported by any evidence. Thus, Hooper offers no newly discovered evidence to support the alleged factual predicate for his *Brady* and *Napue* claims. In other words, Hooper cannot make a prima facie showing that he meets the stringent standards under § 2244(b)(2)(B) because he fails to show that the alleged new evidence—that Marilyn saw a photo lineup of Hooper—even exists. *See Woratzeck*, 118 F.3d at 651 ("Woratzeck must

15

make a prima facie showing that this evidence exists, and that it would exonerate him under the stringent standard of section 2244(b)(2).").

## IV

We **AFFIRM** the district court. It properly dismissed Hooper's due process and actual innocence claims. It also correctly determined that the *Brady* and *Napue* claims are second or successive subject to § 2244(b)(2). Because Hooper has failed to meet the requirements under § 2244(b)(2)(B) as to his *Brady* and *Napue* claims, his petition, which we construe as a request for leave to file a second or successive petition, is **DENIED**.[12] For the foregoing reasons, we also deny Hooper's motion for a stay of execution.

---

[12] "The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244 (b)(3)(E).